[Crim. No. 13052. Second Dist., Div. Two. Nov. 15, 1967.]

THE PEOPLE, Plaintiff and Appellant, v. CHRISTOPHER B. CLARK et al., Defendants and Respondents.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Donald J. Kaplan, Deputy District Attorneys, for Plaintiff and Appellant.

Gordon P. Levy, Rose, Klein & Marias, Barry I. Goldman and Carl Burkow for Defendants and Respondents.

ROTH, P. J.—Respondents were each charged by information with one count of violating Penal Code, section 459 (burglary). Their motion to set aside the information under Penal Code, section 995 was granted. The People appeal from the order granting the motion. (Pen. Code, § 1238, subd. 1).

On August 4, 1966 between 9:30 and 10 p.m., Dean Hummer, the manager of a Harley-Davidson motorcycle shop in Van Nuys locked the premises and left. At approximately 3:05 a.m., Officer Meyerhoff was in the vicinity of the shop when he heard a burglar alarm from the motorcycle shop. He saw that the front door was open and called for a sergeant to be sent to the location.

At about 3:10 a.m., while the officer was awaiting the arrival of the sergeant, a citizen in an automobile stopped at the store and identified himself as a Mr. Nichols. Mr. Nichols told Meyerhoff that a motorcycle that he had observed there on a previous occasion was missing, and described the motorcycle as "a Harley-Davidson, blue, with chrome, and ... that he believed he knew who had taken the motorcycle." Nichols said that he "kind of figured" it was taken by his neighbor and gave the neighbor's address. Nichols said "that he didn't know the fellow's name, but he lived next door to him, describing him as a Caucasian, approximately 20 years old, a tattoo on his arm, a panther head." He stated that he thought his neighbor may have taken the machine because he "had also admired the motorcycle." Nichols then drove off.

Nichols testified at the preliminary hearing that at approximately 2 a.m. he picked up his wife from her place of employment and was driving past the motorcycle shop when he heard the burglar alarm. He approached the officer at the store and told him that he believed he knew where the allegedly missing bike was located. Nichols then left the motorcycle shop with his wife and went home. Upon returning to his apartment building, he went to respondent Clark's apartment, knocked on the door and Clark let him in. Mr. Nichols saw respondent Earls sitting in a chair. There was another person on the other side of the room, but he was unable to identify that person. Clark laughed and pulled Mr. Nichols into an unlit bedroom after Nichols told him that a motorcycle was missing from the shop. Nichols testified that he saw the back of a motorcycle in the dim light of the bedroom. After leaving Clark's apartment, Mr. Nichols saw the officer to whom he had previously spoken accompanied by others and told them that the allegedly missing motorcycle was in the apartment.

Meyerhoff testified that he had never seen Nichols prior to this time.

Meyerhoff proceeded to check the inside of the shop and then went to the apartment address given to him by Nichols. Arriving at the apartment, Meyerhoff, who had been joined by other officers, saw Nichols coming from the apartment. Nichols approached the officers and told Meyerhoff that he had just left the apartment, the address of which he had given Meyerhoff, that there were three men in the apartment and that he had seen the motorcycle that was originally in the shop in the bedroom of respondent Clark's apartment.

The officers went to Clark's apartment. Meyerhoff knocked on the door and identified himself. Clark opened the door and Meyerhoff and three other officers entered the apartment. The police officers did not possess a search warrant nor did they ask for or receive permission to enter the apartment. Respondent Earls, completely dressed, was seated in a chair in the living room and respondent Giesseman, dressed except for a shirt, was lying on the couch. Upon entering, Officer Meyerhoff walked into the bedroom, discovered the motorcycle there, and placed all three respondents under arrest.

■ Penal Code, section 995 requires that an information be set aside if the defendant was committed "without reasonable and probable cause." To be sufficient, the evidence at the preliminary examination must support a reasonable belief that the offense charged was committed and that the accused

committed it. In other words, the evidence must establish a prima facie case. It is clear, however, that such evidence must be competent. Thus, an information based entirely on incompetent evidence will be set aside. (*Rogers* v. *Superior Court*, 46 Cal.2d 3, 8 [291 P.2d 929]; *People* v. *Prewitt*, 52 Cal.2d 330, 335-336 [341 P.2d 1].)

The basic question presented here is whether sufficient competent evidence was presented that the crime charged was committed and that respondents committed it. This may be divided into two parts: (1) whether the arrest of respondents was valid and therefore whether evidence acquired by the search incident thereto constituted competent evidence; and (2) assuming arguendo that the arrest was invalid, thereby invalidating the search, whether there was other sufficient competent evidence to warrant bringing respondents to trial.

Penal Code, section 836, subdivision 3 provides that a police officer may make an arrest without a warrant where he had reasonable cause to believe that the person to be arrested has committed a felony. If reasonable cause exists to arrest a person, the search[1] made incident to the arrest is lawful even though it precedes rather than follows the arrest. (*People* v. *Brown*, 45 Cal.2d 640 [290 P.2d 528]; *People* v. *Torres*, 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823]; *People* v. *Holmes*, 237 Cal.App.2d 795, 799 [47 Cal.Rptr. 246].)

The important consideration is "whether the officer had reasonable cause before the search to make an arrest . . ." (*People* v. *Simon*, 45 Cal.2d 645, 648 [290 P.2d 531]).

"Reasonable or probable cause for an arrest has been the subject of much judicial scrutiny and decision. There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances . . . and on the total atmosphere of the case. . . . Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*People* v. *Lara*, 67 Cal.2d 365, 373-374 [62 Cal.Rptr. 586, 432 P.2d 202];

---

[1]Whether the activities of the police in the instant case constituted a search in the technical sense of "viewing . . . that which was not only intended to be private or hidden, but that which was . . . made concealed or closed from open veiwing." (*People* v. *Holloway*, 230 Cal.App.2d 834, 839 [41 Cal.Rptr. 325]) or a mere observation is purely semantic. In applying either term to the present case, its validity will depend upon the legality of the arrest. For the sake of simplicity, we have referred to the police activities here as a "search."

*People* v. *Ingle,* 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577] ; *People* v. *Privett,* 55 Cal.2d 698, 701 [12 Cal.Rptr. 874, 361 P.2d 602] ; *People* v. *Talley,* 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564].)

█ Although the officer who made the arrest had not interviewed the proprietor of the store prior to the arrest, he did know that a burglar alarm had sounded and it appeared reasonable to him as it would to any person, that the store had been broken into and a burglary committed. He was informed as he approached the apartment building by the same person who had accosted him at the store which he had been investigating, that this person had seen the motorcycle in question in the bedroom of the apartment. In these circumstances, the decisive question is not the reliability of an untested informer. In *Lara* the court says at pages 374-375 : "But information given by an untested informant or arrestee is nevertheless sufficient if it is 'corroborated, in essential respects, by other facts, sources or circumstances.' (*People* v. *Reeves* (1964) 61 Cal.2d 268, 274 [38 Cal.Rptr. 1, 391 P.2d 393].) █ Such corroboration need not itself amount to reasonable cause to arrest; its only purpose is to provide the element of 'reliability' missing when the police have had no prior experience with the informant. Accordingly, it is enough if it gives the officers reasonable grounds to believe the informant is telling the truth, for in this type of case the issue is 'not whether the information obtained by the officers emanated from a reliable source, but whether the officers could reasonably rely upon that information under the circumstances.' (*People* v. *Sandoval* (1966) 65 Cal.2d 303, 308-309 [54 Cal.Rptr. 123, 419 P.2d 187], citing *Willson* v. *Superior Court* (1956) 46 Cal.2d 291, 294-295 [294 P.2d 36].) "

█ The arrest and search were proper.

█ Wholly aside from the evidence obtained as a result of the arrest and search above detailed, there is enough competent evidence to support the charge. Since there is, the charge will not be set aside simply because some incompetent evidence was also received. (*People* v. *Rissman,* 143 Cal.App. 2d 488, 496 [299 P.2d 944].) The testimony presented at the preliminary hearing was as follows: Mr. Hummer, the manager of the shop, testified that when he arrived at the shop he noticed that a certain motorcycle was missing and that it was the only one in the shop at that time. Officer Meyerhoff testified as to the condition of the shop and the alarm. Nichols stated that he told the officers that he believed

a bike was stolen and that he believed respondent Clark had stolen it. He further testified that after he told Clark that a motorcycle was missing from the shop Clark pulled him into an unlit room and he saw what he later stated was a motorcycle.

Sufficient competent evidence was presented to the magistrate to warrant an inference that a burglary was committed and that the respondents committed the burglary. The testimony of Hummer and Officer Meyerhoff was sufficient to establish a reasonable inference that a crime was committed. Nichols' testimony, apart from that of the arresting officer, to the effect that he saw a motorcycle in the apartment shortly after the alleged burglary; that it was in the bedroom rather than in a more usual location; and the manner in which Clark showed it to Nichols constituted sufficient circumstantial evidence to hold respondents over for trial.

The committing magistrate could reasonably draw the inference that respondents Giesseman and Earls were acting in concert with Clark in the commission of a burglary, from the fact that they were in the Clark apartment at that time in the morning.

*People* v. *Platt,* 124 Cal.App.2d 123, 131 [268 P.2d 529] states: ''On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated. (*Weber* v. *Superior Court,* 35 Cal.2d 68, 69 [216 P.2d 871].)''

 Under Penal Code, section 995, the information will be set aside only where there is no evidence that a crime has been committed or there is no evidence to connect the defendant with a crime shown to have been committed. (*Lorenson* v. *Superior Court,* 35 Cal.2d 49, 55-57 [216 P.2d 859].)

The evidence was sufficient to hold the respondents for trial.

The order is reversed.

Herndon, J., and Fleming, J., concurred.