[Crim. No. 16882. Second Dist., Div. Two. Nov. 6, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS CURLEY, Defendant and Appellant.

COUNSEL

Frank P. Rosen, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Blanche C. Bersch, Deputy Attorney General, for Plaintiff and Respondent.

OPINION ·

FLEMING, J.—Defendant appeals his conviction for arson (Pen. Code, § 448a),[1] arguing insufficiency of the evidence to support the finding of guilt, improper admission of evidence seized from his automobile, and improper admission of his statements to the police at the hospital.

During the early morning hours of 25 August 1968 a fire of incendiary origin largely destroyed a restaurant in Covina. Partially filled containers of gasoline were found inside the building, and an empty container with volatile fractions which resembled gasoline was found outside the rear door.

---

[1]The information and judgment erroneously refer to the Penal Code section on arson as 484a instead of 448a. Since it is demonstrable that defendant was not misled, the typographical error is harmless and correctible on appeal. (Cal. Const., art. VI, § 13.)

A trail of burnt cloth approximately 50 feet long led from the rear door to a parking space behind the building.

An hour or so after the discovery of the fire the police learned that defendant, a part-time employee of the restaurant, had just been admitted to a hospital for treatment for severe fire burns. Later they were told by defendant's brother that defendant had returned home early that morning, naked, and suffering from fire burns over much of his body. Despite the obvious severity of the burns defendant and his brother attempted to treat his condition with ice water baths and applications of sunburn spray purchased from a 24-hour grocery store.

That same morning the police found a piece of burnt cloth in defendant's automobile, cloth which had the identical thread count and could have come from the same source as the burnt cloth at the scene of the fire. The police subsequently discovered that two days before the fire defendant had purchased 3 gallons of gasoline and taken it away in 1-gallon containers, a fact he initially denied and then later admitted.

A police officer who accompanied defendant to the hospital in the ambulance asked him "how he had gotten burnt. He said up fighting the fire. I referred to the fire up in the mountains and he says yes." The following day defendant was interviewed by officers investigating the restaurant fire. The interview was brief, and defendant's only statement was that he had gotten his burns in the Fish Canyon area. A month later defendant, after having been advised of his constitutional rights, gave an extensive statement to the police setting forth the basic theme of his defense, i.e., he had not been fighting a mountain fire but had been surreptitiously hunting at night in the area of the fire and had avoided established roadblocks to do so.

At his trial defendant testified he had devised a method for simultaneously holding a flashlight and a rifle in such a way that he could shoot rabbits at night. While thus engaged he had slipped on shale and rolled through a wall of flame which rose 50 feet into the air. Thereafter, he tore off his burning clothes, walked two to three miles to his automobile, and then drove several miles to his residence without stopping to seek medical assistance or first aid.

On rebuttal, an expert testified that the combustible material in the San Gabriel mountain range was capable of producing temperatures above 2,500 degrees, that if flames were shooting up in the manner described by defendant it would be highly unlikely that anyone could pass through them and survive. A deputy sheriff testified that at the time of the mountain fire he had been in charge of a command post which blocked the only road up Fish Canyon and at no time did he see defendant in the area.

## I

■ In weighing the evidence the trial judge rejected defendant's version of the manner in which he sustained his extensive burns, stating "I find his story incredible and do not accept it." We agree with this conclusion of the trial judge, and we consider the evidence more than sufficient to support the finding of guilt.

## II

The events relating to the discovery and seizure of the burnt cloth from defendant's automobile unfolded in the following order:

5:03 a.m.—Restaurant premises discovered engulfed in flames.

5:30 a.m.—Assistant Fire Chief Johnson, an expert in arson, arrived on the scene. He found partially empty containers of gasoline on the premises and he noted that the rear door was unlocked and ajar and its frame had no pry marks. From these and other observations he concluded that the fire was of incendiary origin.

6:30 a.m.—Chief Johnson learned that defendant, a part-time employee of the restaurant, had just been taken to the hospital suffering from severe fire burns on his arms, legs, and torso.

9 a.m.—At defendant's residence Chief Johnson and two police officers talked to defendant's brother, who said that defendant had driven home about 6 a.m. after having been burned in a mountain fire. Defendant's automobile was parked in the backyard, and the brother gave the officers permission to look at it. When Chief Johnson looked inside the automobile's window on the driver's side he saw what appeared to be a piece of burnt cloth. He took this burnt cloth, returned to the restaurant premises, and there found a trail of apparently the same material leading from the rear door of the restaurant to a parking space 50 feet away. A subsequent comparison of the burnt cloth found in the automobile with that found at the scene of the fire showed that both materials had the same thread count.

Clearly, from the outset of their investigation the authorities had reasonable cause to believe that arson had been committed. While there was no initial indication of the identity of the arsonist, when the investigating officers learned that a part-time employee of the restaurant had been severely burned that same morning he became an obvious subject for their investigation. The officers' interest in his activities was intensified when they learned he had driven home about 6 a.m. and told his brother he had been burned in a fire. Chief Johnson sought and received permission from the brother, a resident of the premises, to enter the backyard in order

to look at defendant's automobile. Thus, when he looked in the window of the automobile he was doing so with the permission of its temporary custodian from a place in which he was entitled to be. (*People* v. *Smith,* 63 Cal.2d 779, 799-800 [48 Cal.Rptr. 382, 409 P.2d 222].) At that time Chief Johnson was neither trespassing nor engaging in an unlawful search, and unquestionably he was entitled to testify about what he had seen in plain view through the window. (*People* v. *Roberts,* 47 Cal.2d 374, 380 [303 P.2d 721]; *People* v. *West,* 144 Cal.App.2d 214, 219-220 [300 P.2d 729]; *Ker* v. *California,* 374 U.S. 23, 43 [10 L.Ed.2d 726, 743, 83 S.Ct. 1623].)

■ The problem of seizure arises because after Chief Johnson saw the burnt cloth he took it away without the permission of its owner or custodian. The legal question is whether he was entitled to seize without warrant an item which did not fall within any of the three categories of property subject to seizure at common law (fruits of crime, instruments of crime, and contraband) and which he had not obtained in the course of a lawful search or lawful arrest. The item seized is best described as potential evidence, and the issue, broadly put, is whether a peace officer[2] in the course of an investigation can seize without warrant potential evidence which he believes will assist in the solution and prosecution of crime. If he can, what circumstances entitle him to do so?

There appears a dearth of precedent on the point, undoubtedly because prior to the decisions in *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], and *Mapp* v. *Ohio* (1961) 367 U.S. 643, 655-657 [6 L.Ed.2d 1081, 1089-1091, 81 S.Ct. 1684, 84 A.L.R.2d 933], evidence was legally admissible regardless of the methods by which obtained. This was the rule at common law and is still the rule in England.[3] Even after *Cahan* most warrantless seizures litigated in the courts were connected with a search or an arrest, and the courts tended to focus their attention exclu-

---

[2] Chief Johnson, an arson investigator for a fire protection unit, falls within the category of peace officer. (Pen. Code, § 830.3, subd. (m), formerly § 817.)

[3] English law continues to refuse to suppress evidence which has been obtained contrary to law. (15 Halsbury's Laws of England (3d ed.), pp. 266-267.) Recent cases include *King* v. *The Queen* [1969] 1 A.C. 304, also reported as *King* v. *Reginam* [1968] 2 All Eng.Rep. 610; *Chic Fashions* v. *Jones* [1968] 1 All Eng.Rep. 229 and *Kuruma* v. *Regina* [1955] 1 All Eng.Rep. 236. It is also established law in England that if the police are searching for one purpose and see contraband or evidence which would prove another crime, they are entitled to seize such items. (*Elias* v. *Pasmore* [1934] 2 K.B. 164.)

England does, however, recognize a doctrine of fairness to the accused under which the court has discretion to suppress evidence when it believes the police have acted oppressively. English cases evaluate the problem of search and seizure as one of striking a balance between the interest of the individual in remaining free from intrusion and the interest of society in maintaining order and suppressing crime. The reported cases suggest that evidence is rarely suppressed because of unfairness to the accused.

sively on the validity of the search or arrest and treat the seizure as a wholly dependent question. Because of the absence of direct precedent, we examine the question of authority to seize in some detail.

## Seizure Under the Fourth Amendment

Our starting point in the consideration of seizure without warrant is the Fourth Amendment to the federal Constitution (substantially incorporated in the California Constitution as article I, section 19): "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." While this amendment places general limitations on the seizure of persons, papers, effects, and things, it does not prohibit all seizures, only those which are unreasonable, and we must therefore explore the content of reasonableness as it relates to a seizure of potential evidence.

Our first question is whether under the Fourth Amendment any warrantless seizure of potential evidence, apart from lawful search or lawful arrest, is permissible. On this point the key case is *Warden* v. *Hayden,* 387 U.S. 294 [18 L.Ed.2d 782, 87 S.Ct. 1642]. There, the police learned that an armed robbery had just taken place and a suspect gone inside a certain house. Officers entered the house to search for the suspect and in due course found him in an upstairs bedroom. Meanwhile an officer had been searching the cellar, and he found in a washing machine a jacket and trousers of the type said to have been worn by the robber. The police seized these clothes and used them as evidence at the trial. Since the seizure was not directly incident to the suspect's arrest and since the clothes could not be classified as fruits of crime, instruments of crime, or contraband, the use of the clothes as evidence raised the question whether the prohibition against a seizure of mere evidence, formulated in *Gouled* v. *United States,* 255 U.S. 298 [65 L.Ed. 647, 41 S.Ct. 261], was still valid. The court overruled *Gouled,* rejected as discredited the premise that the law of property exclusively governs the validity of a seizure, and concluded that nothing in the Fourth Amendment supported a distinction between seizure of mere evidence on the one hand and seizure of fruits, instruments, or contraband on the other. The court then introduced two new elements for use in the evaluation of a particular search and seizure. The first was a person's reasonable expectation of privacy. Since in the case before it police entry into the house had been justified by exigent circumstances, specifically, hot pursuit of a suspect, reasonable expectation of privacy did not foreclose

the police from conducting their search without warrant. The second new element was recognition of a governmental interest in seizing evidence in order to solve crime and apprehend and convict criminals. In outlining the boundaries of that interest, the court said: "There must, of course, be a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior. Thus in the case of 'mere evidence,' *probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction.* In so doing, consideration of police purposes will be required. Cf. *Kremen* v. *United States,* 353 U.S. 346 [1 L.Ed.2d 876, 77 S.Ct. 828]. But no such problem is presented in this case. The clothes found in the washing machine matched the description of those worn by the robber and the police therefore could reasonably believe that the items would aid in the identification of the culprit." (387 U.S. at p. 307 [18 L.Ed.2d at p. 792]; italics added.)

Two points should be noted from the case. First, the court entered a final decree of divorce between the law of property and the law of seizure, and the rules of the former no longer wholly determine the validity of the latter. Second, the seizure was upheld on the specific ground that the seized items qualified as evidence to aid in the prosecution of a crime.

Further comment on the right to seize evidence without a warrant is found in *Harris* v. *United States* (1968) 390 U.S. 234 [19 L.Ed.2d 1067, 88 S.Ct. 992]. A police officer was searching an impounded automobile held as evidence of a robbery, and in the course of making the automobile secure for purposes of the impound (tagging it, locking it, putting up the windows, etc.) he found a registration card which belonged to the victim of the robbery. Petitioner contended that the registration card had been illegally seized during a warrantless search of his automobile. In rejecting petitioner's claim of illegal search and seizure the court said the registration card had not been discovered as the result of any illegal search but had been seen by the officer in plain view while he was taking measures to protect the car during its stay in police custody. The court then declared, "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." (390 U.S. at p. 236 [19 L.Ed.2d at p. 1069].) In support of its declaration the court cited *Ker* v. *California* (1963) 374 U.S. 23, 42-43 [10 L.Ed.2d 726, 743-744, 83 S.Ct. 1623]; *United States* v. *Lee* (1927) 274 U.S. 559 [71 L.Ed. 1202, 47 S.Ct. 746], and *Hester* v. *United States* (1924) 265 U.S. 57 [68 L.Ed. 898, 44 S.Ct. 445]. None of these cases precisely supports a seizure of objects which are mere evidence, since *Ker, Lee,* and *Hester* each dealt with a seizure of contraband (narcotics, bootleg liquor, and moonshine). And since the item

seized in *Harris* (the registration card) was stolen property and the items in *Hayden* were seized during hot pursuit, it can be argued that factually none of these cases involved any departure from previous limitations on seizure without warrant.

Yet in fact the court has broken new ground. This became apparent in *Frazier* v. *Cupp,* 394 U.S. 731 [22 L.Ed.2d 684, 89 S.Ct. 1420], where the police arrested a codefendant and asked for and obtained permission to search a duffel bag. During the search the officers came upon petitioner's clothing and seized it. The court said that since the codefendant was a joint user of the duffel bag he clearly had authority to consent to its search. "The officers therefore found evidence against petitioner while in the course of an otherwise lawful search. Under this Court's past decisions, they were clearly permitted to seize it. *Harris* v. *United States,* 390 U.S. 234 [19 L.Ed.2d 1067, 88 S.Ct. 992] (1968); *Warden* v. *Hayden,* 387 U.S. 294 [18 L.Ed.2d 782, 87 S.Ct. 1642] (1967)." (394 U.S. p. 740 [22 L.Ed.2d p. 693].)

None of the rather cryptic statements on seizure found in *Hayden, Harris,* and *Frazier,* undertook any extensive analysis of the elements involved in search or seizure without warrant, and for such an analysis we turn to the dissenting opinion of Frankfurter, J., in *United States* v. *Rabinowitz,* 339 U.S. 56, 68 [94 L.Ed. 653, 661, 70 S.Ct. 430], a case of search incident to arrest. In that opinion Frankfurter argued that search incident to arrest should be limited to the immediate area over which the arrested person has control and to those effects which may fairly be deemed an extension of his person, an argument which the court has since adopted in *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. Frankfurter began his consideration of search with the premise that every search is unreasonable unless authorized by a warrant issued on probable cause or unless justified by absolute necessity. He then inquired into the nature of necessity and answered his own query by furnishing two examples. First, the search of an arrested person. Such a search is necessary and therefore permissible for two reasons: first, to protect the arresting officer from harm and deprive the arrested person of potential means of escape; second, to prevent destruction of evidence by the arrested person. (339 U.S. at p. 72 [94 L.Ed. at p. 663].) In this example it is apparent that necessity is tied to the factor of preservation, i.e., a search is justifiable to keep matters as they are. Frankfurter would confine such a search to the strict requirements of the situation. Frankfurter's second example of necessity is the search without warrant of moving vehicles and vessels. Such warrantless searches are sanctioned, he declared, because it is not practicable to secure a warrant to search a vehicle which can be moved out of the jurisdiction before the warrant can issue. The search of moving vehicles and vessels

is therefore justified by a lack of time to secure a warrant. Here necessity is tied to the factor of time. In the second example the searching officer must be able to show the court probable cause for acting as he did. (339 U.S. at p. 73 [94 L.Ed. at p. 664].) During the course of his opinion Frankfurter suggested a third exception to the requirement of a warrant for search and seizure, this one specifically relating to seizure in connection with an arrest. He referred to the right to seize instruments or fruits of crime which are in open view at the time of an arrest, but he added the caution that the right to seize these items does not carry a right to search for them. (339 U.S. at p. 75 [94 L.Ed. at p. 665].)

From this opinion we conclude that search and seizure without a warrant may be justified by necessity, that necessity comprehends the timely preservation of evidence from destruction, that under some circumstances a seizure of items in plain sight may be appropriate. But this authority to search and seize is subject to the requirement that the officer who takes such action be able to show a court probable cause for what he has done.

This same recognition of necessity as a factor which can justify search and seizure without a warrant appears in *Ker* v. *California,* 374 U.S. 23, 42 [10 L.Ed.2d 726, 743, 83 S.Ct. 1623]; and in *McDonald* v. *United States,* 335 U.S. 451, 454, 457 [93 L.Ed. 153, 157, 159, 69 S.Ct. 191], where in a concurring opinion Jackson suggests that necessity is related to the gravity of the offense thought to be in progress. The principle expressed in these cases is pragmatic and utilitarian. A search and seizure without a warrant will be upheld when required by absolute necessity or, in the language of the cases, by exigent circumstances, by exceptional circumstances, in an emergency, where there are compelling reasons, or when time is of the essence. (*Ker* v. *California, supra; McDonald* v. *United States, supra; United States* v. *Rabinowitz, supra* (dissent).)

One Supreme Court case directly in point on warrantless seizure dissociated from search is *Zap* v. *United States,* 328 U.S. 624 [90 L.Ed. 1477, 66 S.Ct. 1277]. There, a government contractor under a cost-plus contract agreed to permit government inspection and audit of his books. While government agents were engaged in such an audit they found a check which suggested fraud in support of a voucher for work under the contract. The agents took the check and later used it as evidence in the contractor's prosecution for fraud. The court treated the case as one which involved a warrantless seizure of the check by government agents lawfully engaged in an authorized inspection of the contractor's records. Their inspection was made during regular hours of business, with the cooperation of the contractor's staff, and without the use of threats or force. "The agents, therefore, were lawfully on the premises. They obtained by lawful means access

to the documents. That much at least was granted by the contractual agreement for inspection. They were not trespassers. They did not obtain access by force, fraud, or trickery. Thus the knowledge they acquired concerning petitioner's conduct under the contract with the government was lawfully obtained." (328 U.S. at p. 629 [90 L.Ed. at p. 1482].) From these circumstances a majority of the court concluded that the seizure was lawful and that no wrongdoing was involved in taking the check away from the contractor's place of business for potential use as evidence. "Though consent to the inspection did not include consent to the taking of the check, there was no wrongdoing in the method by which the incriminating evidence was obtained." (P. 630 [90 L.Ed. p. 1483].) The court declared that objections to the procedure followed by the agents were purely technical and concluded that to reverse the judgment would "exalt a technicality to constitutional levels." This reasoning of the majority did not persuade the dissenters, for whom Frankfurter argued that the Constitution is directed against both illegal searches and illegal seizures and that the legality of the search did not automatically legalize the accompanying seizure. (P. 632 [90 L.Ed. p. 1484].)

State court opinions which reject the mere-evidence rule have discussed some of the elements relevant to our inquiry. In *State* v. *Bisaccia,* 45 N.J. 504 [213 A.2d 185], the Supreme Court of New Jersey rejected a property test to determine the validity or invalidity of a search or seizure. "If the subject is examined upon principle alone, the property thesis cannot explain government's authority to search. We know that what is seized is in fact taken primarily to be used against the accused rather than to deprive him of some property he ought not to have or to gratify the right of another to acquire the article for its intrinsic worth. When the State searches for a bloodied ice pick, it is not at all interested in its penny value; the State could buy dozens of new ones at a fraction of the cost. Moreover, the question whether the article seized is the fruit of crime, or is contraband, or has been forfeited by evil use, would frequently depend upon the outcome of the very proceeding in which it is offered to prove guilt. . . . It would demean the law to vindicate a search and seizure in terms of a proprietary interest when everyone knows the quest is usually for evidence of guilt and nothing else." (213 A.2d at p. 187.) The New Jersey court then declared that the goal of the Fourth Amendment is to strike a fair balance between a man's privacy in his possessions and the government's duty to protect its citizens from criminal conduct. (Pp. 188, 192.) So long as the evils of the general warrant and of unrestricted invasion into privacy are avoided, the government may search and seize for the avowed purpose of finding evidence with which to convict. ". . . the Fourth Amendment contemplates that things may be seized for their inculpatory value alone and

that a search to that end is valid, so long as it is not otherwise unreasonable. . . ." (P. 193.)

Many of these same conclusions have been adopted by the California Supreme Court. In *People* v. *Thayer*, 63 Cal.2d 635 [47 Cal.Rptr. 780, 408 P.2d 108], the court, following the precedent of New Jersey, likewise abandoned the mere-evidence rule and declared that property concepts would no longer exclusively determine the validity of searches and seizures. "The modern view . . . is that the exclusionary rules of evidence exist primarily to protect personal rights rather than property interests and that common-law property concepts are usually irrelevant." (63 Cal.2d at pp. 637-638.) This same hypothesis was further developed in *People* v. *Edwards*, 71 Cal.2d 1096, 1100 [80 Cal.Rptr. 633, 458 P.2d 713], a case which invalidated a warrantless search of an outside trash container correctly suspected of use as a hiding place for marijuana. If property concepts still controlled search and seizure, the contents of the trash container would be classified as abandoned property and become subject to examination and seizure. (*Hester* v. *United States*, 265 U.S. 57 [68 L.Ed. 898, 44 S.Ct. 445].) But the court rejected the law of property as the sole standard with which to measure the validity of the particular search and instead evaluated the legality of the search under a dual standard consisting of the trash can user's reasonable expectation of privacy and of the reasonableness of the government's intrusion. By these standards the court found the search unlawful, since it involved a trespass and since the marijuana had not been visible without police rummage in the container. In both *Thayer* and *Edwards* the court focused its attention on the search aspects of the Fourth Amendment and did not separately consider the issue of seizure. While a few California cases have upheld evidentiary seizures without warrant, they have failed to articulate any legal reasoning to justify such seizures. [*People* v. *Roberts*, 47 Cal.2d 374 [303 P.2d 721] (a police officer picked up a radio in plain sight and noted its serial number—in effect a seizure of the number as evidence); *People* v. *Harris*, 67 Cal.2d 866 [64 Cal.Rptr. 313, 434 P.2d 609] (robbery suspects abandoned their automobile during pursuit and the police removed articles of clothing in plain view on the back seat); *People* v. *Reed*, 210 Cal.App.2d 80 [26 Cal.Rptr. 428] (a police officer immediately prior to defendant's arrest seized a rope protruding from beneath defendant's front boardwalk).]

From this review of the cases it clearly appears that seizure of potential evidence without warrant (dissociated from search or arrest) is permissible under the Fourth Amendment. Unfortunately, the cases do not discuss the circumstances which will serve to validate an evidentiary seizure without warrant nor do they formulate any general rationale for the guidance of peace officers and courts. Additionally, the cases themselves have tended

to involve seizures of items historically subject to seizure (instrumentalities, fruits of crime, and contraband), seizures connected with arrest, and seizures during hot pursuit. (Cf. concurring opinion in *Warden* v. *Hayden,* 387 U.S. 294, 310 [18 L.Ed.2d 782, 794, 87 S.Ct. 1642], which suggests that seizures should continue to be limited to these categories.) The one case directly in point, *Zap* v. *United States,* 328 U.S. 624, 630 [90 L.Ed. 1477, 1482, 66 S.Ct. 1277], dismisses as a technicality the objection there made to evidentiary seizure without warrant. Because of the lack of legal reasoning on the subject of evidentiary seizure without warrant, we turn for enlightenment to comparable situations involving direct action by a peace officer without prior authorization from a magistrate. The two closest and most analogous situations are arrest without warrant and search without warrant. When we analyze the elements which have served to validate such actions we find the presence of two dominant, recurring themes. The first is necessity; the second is reasonable cause.

*Necessity*

In both warrantless arrest and warrantless search the Supreme Court has said that when immediate action is necessary, public authority may act in order to further its interest in solving and suppressing crime. (*Terry* v. *Ohio,* 392 U.S. 1, 22 [20 L.Ed.2d 889, 906, 88 S.Ct. 1868].) Necessity provides the justification for stop-and-frisk and for search during hot pursuit. (*Terry* v. *Ohio,* 392 U.S. 1, 21 [20 L.Ed.2d 889, 905, 88 S.Ct. 1868]; *Warden* v. *Hayden,* 387 U.S. 294, 306 [18 L.Ed.2d 782, 791, 87 S.Ct. 1642]; cf. *King* v. *Queen* [1969] 1 A.C. 304.)

When public authority is engaged in furthering its interest in solving and suppressing crime by means of evidentiary seizure, of what does this necessity consist? The answer is not difficult to find: in such instance necessity refers to the preservation of potential evidence of crime which, if not seized, will probably disappear. We can suppose a number of instances in which investigating officers come up against the problem of seizure of potential evidence without warrant.

Item: a detective visits the Borden household in Fall River to interview Miss Elizabeth Borden after the discovery of the hacked bodies of her father and mother. On the premises he sees a hatchet next to the fireplace and an ax in the woodshed. Miss Borden notices the detective looking at these household items, and he notices that she notices. Unless he seizes these tools at once and has them examined for blood stains and fingerprints the probability is overwhelming that their value as evidence will be lost. Can he do so?

Item: in a hit-and-run death the police are led to the suspect's automobile, which matches the description of the automobile which fled the scene

of the accident. The fender of the car discloses some dents and some loss of paint. Can the police seize a few scraps of loose paint from the fender to compare with those discovered at the scene of the crime and on the body of the victim?

Item: the window of a burglarized house has been jimmied by a chisel which left distinctive marks on the frame. Next morning while the police are interviewing a suspect they see a chisel on the floor of his automobile. Can the police seize the chisel to make tests?

Item: the police are summoned to a household where a guest has become deathly ill under circumstances which suggest he has been poisoned. Can the police seize the glass with the remnants of the guest's drink in order to analyze its contents and examine it for fingerprints? Can they do this over the protest of the host, the owner of the glass?

In each of the foregoing instances a crime has occurred or is suspected. In each instance if a particular item is not seized on the discovery of its potential relevancy to the crime there is an obvious danger that important evidence will be lost or destroyed and become unavailable for the solution of the crime. In each instance we have a clear application of the Frankfurter principle of absolute necessity, and in each instance it would appear essential for the police to seize the potential evidence without securing a warrant if they are to fulfill their function of solving and suppressing crime. So it is with the case at bench, whose facts furnish a close parallel to the hypothetical situations we have described and whose circumstances of time and place qualify as exigent in the context of the solution and suppression of crime.

But necessity alone is not enough to justify police action without warrant. Both arrest without warrant and search without warrant must satisfy the added requirement of reasonable cause.

*Reasonable Cause*

Reasonable cause is a quantitative phrase used to allocate the relative weight of conflicting interests in a particular case, as, for example, the interest of public authority in making a necessary arrest or search or seizure without warrant as against the interest of the individual in remaining free from official intrusion except on the intervention of a magistrate. The reconciliation of these conflicting interests is touched upon in *Terry* v. *Ohio*, 392 U.S. 1, 22 [20 L.Ed.2d 889, 906, 88 S.Ct. 1868], where the court dealt with the accommodation required to be made between the necessity

for seizure of the person and the invasion of personality which seizure entails. After determining that a stop-and-frisk amounts to a temporary seizure of the person (392 U.S. pp. 1, 16, 27 [20 L.Ed.2d pp. 889, 902, 909]), the court declared that the legal question in each case is whether the officer on the facts available to him at the time of seizure can reasonably justify his action. (Pp. 19-20 [20 L.Ed.2d pp. 904-905].) In posing the question the court went on to say, "there is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' *Camara* v. *Municipal Court,* 387 U.S. 523, 534-535, 536-537 (1967). And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (P. 21 [20 L.Ed.2d p. 905].)

*Terry* is one of a number of cases which have undertaken to define reasonable cause for arrest or for search. We think the standard definitions of reasonable cause used in such cases—appropriateness of the particular action at the particular time under the particular circumstances, viewed in the light of available information and the seriousness of the crime—have a parallel application to evidentiary seizure without warrant. In particular we think it logical to assume that the pattern of reasonable cause for seizure of the person (arrest) is relevant to that which is appropriate for seizure of effects (evidence). We find support for this assumption in those sections of the Penal Code which deal with arrest and with search. By statute, a peace officer may arrest a person pursuant to warrant, or when he has reasonable cause to believe the arrested person has committed a felony. (Pen. Code, § 836.) By statute, a peace office may seize items pursuant to warrant (Pen. Code, § 1524, subd. 4), or, if we follow the comparable pattern for arrest, when he has reasonable cause to believe the items are potential evidence of crime. While there is no explicit statutory authority for the latter seizure, by implication Penal Code section 1538.5 recognizes the possibility of evidentiary seizure without warrant and undertakes to create a remedy for its abuse. Section 1538.5 in pertinent part states: "(a) A defendant may move for the return of property or to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on the ground that: (1) The search or seizure *without a warrant was unreasonable;* or (2) The search or seizure with a warrant was unreasonable . . ." (Italics added.) With respect to evidence seized without a warrant, the subsection tells us the evidence may be suppressed, if the seizure was *unreasonable.* The clear implication of the subsection is that the evidence need not be suppressed, if the seizure was *reasonable.* To state the implication positively: a warrantless seizure of evidence may be valid if reasonable cause for the seizure exists.

*Evidentiary Seizure Without Warrant*

We can now outline the circumstances under which a peace officer's seizure of potential evidence without a warrant, dissociated from search or arrest, will be upheld. These circumstances comprehend the following requirements:

(1) The officer must have reasonable cause to believe a particular crime has been committed. This requirement is compelled by the Constitution in order to avoid the danger of exploratory searches and seizures. (*Warden* v. *Hayden*, 387 U.S. 294 [18 L.Ed.2d 782, 87 S.Ct. 1642].) It is required for a search warrant (Pen. Code, § 1524, subd. 4); it is required for an arrest without warrant (Pen. Code, § 836). *A fortiori*, it is required for a seizure of evidence without warrant.

(2) The evidence must not have been discovered as the result of any invasion, intrusion, or illegal entry other than purely formal trespass. (*McDonald* v. *United States*, 335 U.S. 451 [93 L.Ed. 153, 69 S.Ct. 191].) The cases upholding seizure—even of contraband—emphasize that what was seized was seen by an officer from a place in which he had a right to be. (*Hester* v. *United States*, 265 U.S. 57 [68 L.Ed 898, 44 S.Ct. 445]; *People* v. *Terry*, 70 Cal.2d 410, 427 [77 Cal.Rptr. 460, 454 P.2d 36]; *Zap* v. *United States*, 328 U.S. 624 [90 L.Ed. 1477, 66 S.Ct. 1277]; *People* v. *Roberts*, 47 Cal.2d 374 [303 P.2d 721].)

(3) The evidence must be in plain sight or readily accessible to routine inspection without rummage or pry. If the evidence is discoverable only as a result of inquisitive or exploratory action then what is involved is a search, and the rules for search apply. (*Chimel* v. *California*, 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]; *Harris* v. *United States*, 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992]; *Ker* v. *California*, 374 U.S. 23, 43 [10 L.Ed.2d 726, 743, 83 S.Ct. 1623]; *People* v. *Edwards*, 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713].)

(4) The officer must have reasonable cause to believe the evidence tends to show the commission of the crime or tends to show that a particular person committed the crime. (Pen. Code, § 1524, subd. 4; *Warden* v. *Hayden*, 387 U.S. 294 [18 L.Ed.2d 782, 87 S.Ct. 1642].)

(5) The seizure must be necessary to preserve potential evidence, and the degree of invasion of other interests affected by the seizure must be in proportion to the seriousness of the crime.

■ To summarize the rule: when a peace officer lawfully discovers an item he reasonably believes is potential evidence of a particular crime, and its seizure appears necessary for its preservation, he may seize the item

without a warrant. (*People* v. *Terry,* 70 Cal.2d 410, 424 [77 Cal.Rptr. 460, 454 P.2d 36]; *People* v. *Roberts,* 47 Cal.2d 374 [303 P.2d 721].) We find no inconsistency between this rule and *People* v. *Edwards,* 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713], the trash can case, where (1) there was no reasonable cause to believe a crime had been committed; (2) the marijuana in the trash can was not in plain sight but had only been discovered after the police "rummaged" through the contents of the trash can, i.e., conducted what the court considered a general exploratory search.

Applying this rule to the case at bench, we conclude that Chief Johnson's seizure of the burnt cloth was justified and as a consequence the item was properly received in evidence.

## III

Defendant's final contention, the inadmissibility of his statement to the investigating officers the day after the fire, may not be raised on appeal since he did not object to the admission of this evidence in the trial court. Moreover, it is clear that at the time defendant made this statement he was neither in custody nor restrained by police authority. Finally, the statement consisted of no more than defendant's terse assertion he had been burned in the Fish Canyon area, a claim he had previously volunteered to the police officer who accompanied him to the hospital the preceding day. For these reasons the claim of error is without merit.

The judgment is corrected to reflect defendant's conviction under Penal Code section 448a, rather than 484a, and as corrected the judgment is affirmed. The purported appeal from the order denying the motion for a new trial is dismissed.

Roth, P. J., and Herndon, J., concurred.