[Civ. No. 39471. Second Dist., Div. Two. Mar. 6, 1972.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JAMES ANTHONY BARRETT et al., Real Parties in Interest.

## COUNSEL

Joseph P. Busch, District Attorney, Harry Wood and Daniel L. Lieberman, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Edward B. Stanton for Real Parties in Interest.

**OPINION**

**HERNDON, Acting P. J.**—The People seek a writ of mandate pursuant to Penal Code section 1538.5, subdivision (o), to require the respondent court to annul that portion of its order entered on November 5, 1971, which suppresses certain evidence seized by a police officer in the manner hereinafter described.

Prior to October 26, 1970, Officer Gilbert Rivera of the Los Angeles Police Department, assigned to the Narcotics Investigation Division, had received information from an informant to the effect that Jim Barrett, living at 16007 Leadwell, and having a described telephone number, was involved in the sale of numerous types of drugs. After verifying the fact that the phone number furnished was registered to Jim Barrett at the described premises, Officer Rivera contacted his partner and proceeded to the location.

Officer Rivera went to the residence of a Mr. Rush which was located directly to the north of the Barrett residence and obtained permission from Mr. Rush to enter his yard for the purpose of observing the Barrett premises. Mr. Rush also permitted the officer to use his telephone to place a call to Mr. Barrett. The telephone call was answered by a female. The officer advised the female, who identified herself as Jim's wife,[1] that the police knew that Jim was dealing in drugs and that the police were coming over to get Jim and his dope.

Officer Rivera immediately returned to his point of observation in the southwest corner of Mr. Rush's yard which was separated from the Barrett premises by a bamboo and chicken wire fence some 6 feet in height. Officer Rivera, an expert, looked through holes in the wire fence and observed roots, stems and stalks of deleafed marijuana plants scattered about in the rear yard of the Barrett premises.[2]

---

[1] Defense counsel informed the court that "they were not married at that time." Although it is not clearly stated, the record indicates that the defendants were subsequently married.

[2] During the discussion of the case after the conclusion of taking testimony, the defense attorney attacked the officer's identification of the plants as being marijuana. The court observed that the officer was quite certain that the plants observed were marijuana, and held that those marijuana plants which the officer first saw in the defendant's back yard were admissible.

Very shortly after returning to his point of observation following the telephone call, Officer Rivera observed the defendant Susan Sinclair as she emerged from the rear door of the Barrett residence carrying a large green plastic trash bag. Thereafter, as the officer testified, "I saw this young lady enter a door to the west of the location which appeared to be the garage door. Several minutes later, I saw [her] leave that location, look in all directions, look over the fence into the property directly west of her location. I then observed [her] exit the rear of the property into the front of her property at 16007 Leadwell. I then observed [her] climb over a fence which separated her property and the property directly west of her. [She] then disappeared from my view."

Officer Ferris, who was Officer Rivera's partner in the conduct of this investigation, had taken a position on Leadwell Street where he could observe the front of the Barrett premises. The officers carried walkie-talkie equipment by which Rivera reported to Ferris that he had made the telephone call as previously planned and that a blonde lady was coming out of the rear door of the Barrett residence carrying a large green trash bag.

Two or three minutes later Officer Ferris observed the defendant Sinclair in the garage area of the Barrett premises carrying a green plastic trash bag. As she came into the officer's view she appeared to be looking from side to side up and down the street. She then stepped over a small picket fence and walked across her westerly property line and onto the adjoining property of a Mrs. Dorman. She proceeded to the side of Mrs. Dorman's garage where there were three trash cans. She then walked to the first trash can, opened the lid, placed the bag inside, closed the lid and then returned to her house. She continued "looking as she walked."

Thereafter, Officer Rivera, who had been advised by Officer Ferris concerning Sinclair's activities in placing the trash bag in the garbage can, went to the front door of the Dorman residence and knocked several times. Receiving no answer, he went to the trash can and removed therefrom the green plastic bag which Sinclair had deposited therein. The plastic bag contained amphetamines and freshly removed marijuana plants. Officer Rivera returned to the Barrett residence and arrested Sinclair. Barrett appeared a few minutes later and he also was arrested.

Mrs. Dorman testified at the hearing on the 1538.5 motion that she had given the defendants permission to use her trash cans. On direct examination defense counsel asked her: "Now, did something occur about their disposal of trash that made you—that caused any arrangements to be made between you and the Barretts?" Mrs. Dorman answered in the

affirmative and added: "We had a bunch of wild cats and dogs that get loose in the neighborhood and they made a pretty big mess out of plastic trash bags and that is what Jim and Sue were using for their trash, and I told them they were welcome to use mine. We all use each other's stuff on our street."

On cross-examination the prosecutor asked Mrs. Dorman: "Was it your testimony that you would have refused a Los Angeles police officer permission to search your garbage?" Mrs. Dorman answered, "I didn't say that." Although this answer was not stricken, the trial judge on his own motion stopped the inquiry by stating that the question was improper and "speculative."

At the conclusion of the hearing the trial court held that the police officer's tactics in placing the warning telephone call and in observing the defendants' premises from the neighbor's yard were proper; that the officers had probable cause to arrest Sinclair on the basis of her observed activities following the telephone call and their observation of the marijuana plants in the back yard; and that the seizure of the marijuana plants was lawful.

However, although observing that a seizure of the plastic bag from the hands of Sinclair before she placed it in the trash can would have been lawful, the court held that when she placed it in the trash can and "put the cover back on," it was in a "protected area." The reasoning of the trial judge is reflected by comment made by him at the conclusion of the hearing. With respect to the officer's observations from the yard of Mr. Rush, the court observed:

"To my mind the going into the neighbor's yard was not an invasion of these defendants' privacy insofar as it was open to the neighbor; it was open to the officer . . . but I don't think there is any invasion here where it can be seen from the neighbor's yard, and I think that the officer testified that he could see it without looking through the bamboo fence. He could see through the wire fence.

"That is sufficient cause to arrest a person who is on the premises for the cultivation of marijuana even though it was stems or call it stems because that would support an inference that the leaves had been taken off that were in the possession of the parties who had cultivated and grown the plants from which the stems were there. There is sufficient basis for arrest."

With respect to the seizure of the plastic trash bag, the court held that the requirements of *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d

685, 89 S. Ct. 2034], were violated and that a search warrant was required for a lawful search of the trash can. Relying upon *People* v. *Edwards,* 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713], and *People* v. *Krivda,* 5 Cal.3d 357 [96 Cal.Rptr. 62, 486 P.2d 1262], the court further held that the contraband was in "a protected area" by virtue of its location in Mrs. Dorman's trash can, stating: "I think if it is hers or her neighbor's it is still a protected area and I remember her saying that she put the cover back on or somebody saying she put the cover back on . . . . I am not one who claims special expertise on what the area of the protected garbage can is yet. I think the thing that can only be said in this light, Mr. Wynn [the deputy district attorney], when they came down with Edwards it was unusual, shall I say. When they extended it to Krivda it only showed one line of direction—that they were protecting the garbage. In other words, I didn't extend it. Krivda extended it, if you want to talk about extensions."

We hold that the trial court was mistaken in its interpretation and application of the decisions in *Chimel, Edwards* and *Krivda.* To condemn the seizure here in question on the authority of those decisions would require an extension of their rationale to a point of absurdity far beyond their reasonable or intended ambit.

*Edwards* and *Krivda* involved seizures of contraband following exploratory searches made solely upon the basis of tips received from untested informants. In the case at bench there was no search. The officers had seen the plastic bag in the hands of defendant Sinclair as she hurriedly and furtively proceeded from her house and deposited it in her neighbor's trash can. The officer did not search the trash can. He simply retrieved from it the well identified package which he reasonably and rightly believed contained contraband.

Even if we were dealing here with an issue as to the legality of a search and seizure similar to the issues presented in *Edwards* and *Krivda,* those decisions would afford no comfort to the defendants in this case. As stated in *Krivda* at page 364: ▆ "A number of cases in upholding searches in open fields or grounds around a house have stated their conclusions in terms of whether the place was a 'constitutionally protected area,' (see, e.g., cases cited in *People* v. *Edwards, supra,* 71 Cal.2d 1096). That phrase, however, does not afford a solution to every case involving a claim of an illegal search and seizure (see *Katz* v. *United States,* 389 U.S. 347, 350-352 [19 L.Ed.2d 576, 581-582, 88 S.Ct. 507]), and we have held that an appropriate test is whether the person has exhibited a reasonable expectation of privacy, and, if so, whether that expectation has been violated by unreasonable governmental intrusion *(People* v. *Bradley,*

1 Cal.3d 80, 84 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Edwards, supra,* 71 Cal.2d 1096, 1104-1105)."

■ The trial court found, and the defendants concede, that Sinclair was arrested with probable cause. The seizure of the trash bag was properly made as an incident to that arrest. *Chimel* v. *California, supra,* is distinguishable here in the same respects that it was distinguished in the factually similar case of *People* v. *Velasquez,* 3 Cal.App.3d 776, 784-785 [83 Cal. Rptr. 916]. ■ Where an arrest is made with probable cause, the search incident to the arrest is lawful even though it precedes rather than follows the arrest. (*People* v. *Clark,* 256 Cal.App.2d 6, 10 [63 Cal.Rptr. 622].)

■ In *Krivda, supra,* at pages 365-366, the court stated: "Indeed, had defendants simply cast their trash onto the sidewalk for anyone to pick over and cart away, we would have no difficulty finding that defendants had thereby forsaken any reasonable expectation of privacy with respect thereto." When Sinclair cast the trash bag into Mrs. Dorman's garbage can, any reasonable expectation of privacy was forsaken by her. She had no reason to expect that Mrs. Dorman would condone her illegal activities or cooperate in the concealment of the contraband. In a very real sense, Sinclair abandoned the trash bag when she cast it into her neighbor's garbage can. ■ There can be nothing unlawful in the seizure of abandoned property. (*Abel* v. *United States,* 362 U.S. 217, 241 [4 L.Ed.2d 668, 687, 80 S.Ct. 683]; *People* v. *Smith,* 63 Cal.2d 779, 800-801 [48 Cal.Rptr. 382, 409 P.2d 222]; *People* v. *Long,* 6 Cal.App.3d 741, 748-749 [86 Cal. Rptr. 227].)

■ Mrs. Dorman did not authorize defendants to conceal or store contraband in her trash can. Mrs. Dorman was and is entitled to the presumption of innocence of crime. There is absolutely nothing in the instant record that would justify even a suspicion that Mrs. Dorman had placed herself in the position of a *particeps criminis* by authorizing the defendants to store or conceal contraband in her trash can. Every presumption of law is to the contrary. Sinclair's action in placing the contraband in her neighbor's trash can must be presumed to have been, not only an unauthorized and criminal act, but also a flagrant abuse of the privilege which the neighbor had extended. In short, defendants had no reasonable expectation of privacy with respect to such an unauthorized deposit of contraband. Their only reasonable expectation would have been that if Mrs. Dorman had discovered the contraband, she would have reported it to the police.

The officer's action in retrieving the plastic bag from the trash can violated no constitutional right of Mrs. Dorman. "The prohibition in the [Fourth] amendment is against unreasonable searches and seizures, not

trespasses." (*People* v. *Terry,* 70 Cal.2d 410, 427 [77 Cal.Rptr. 460, 454 P.2d 36]; *People* v. *Krivda, supra,* 5 Cal.3d 357, 365.)

It bears repetition that the officer did not search the trash can; he merely retrieved the bag of contraband which Officer Ferris had seen the defendant Sinclair place therein. The propriety of the seizure in this case would have been no clearer if Sinclair had thrown her bag of contraband into her own trash can, into the street, into Mr. Rush's backyard, or into the bushes behind Mrs. Dorman's garage.

Controlling decisions have not vested the lowly garbage can with the degree of sanctity which the trial court attributed to it in this case.

Let a peremptory writ of mandate issue directing respondent superior court to annul that portion of its order of November 5, 1971, which has been reviewed herein, and to enter its order denying defendants' motion to suppress to the extent required by the foregoing opinion.

Compton, J., concurred.

**FLEMING, J.**—I concur. In addition to the analysis contained in the court's opinion, the seizure may also be upheld as a seizure of contraband or evidence effected in the course of a hot pursuit. Here, all appearances indicated that the suspect was stashing contraband in anticipation of an imminent police raid, and she was seen by the police secreting her cache in a particular location. In such circumstances the police can retrieve suspected contraband or evidentiary matter which they have seen a suspect whom they are about to arrest get rid of. (*Warden* v. *Hayden* (1967) 387 U.S. 294 [18 L.Ed.2d 782, 87 S.Ct. 1642]; *People* v. *Curley,* 12 Cal.App.3d 732 [90 Cal.Rptr. 783], and cases there cited.)

The petition of the real parties in interest for a hearing by the Supreme Court was denied May 4, 1972. Peters, J., and Sullivan, J., were of the opinion that the petition should be granted.