[Crim No. 5259. Fourth Dist., Div. One. Oct. 18, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS WHITE STEWART et al., Defendants and Appellants.

## COUNSEL

Neal Pereira, Crobarger & Tessem and Roger C. Crobarger for Defendants and Appellants.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Daniel J. Kremer and Mark L. Christiansen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

AULT, J.—Defendants Thomas White Stewart and James Arthur Thomas appeal from the judgments (orders granting probation) following their respective pleas of nolo contendere and guilty to the crime of engaging in bookmaking (Pen. Code § 337a, subd. 1), as charged in count One of the indictment filed against them. The pleas were entered after denial of their motions to suppress evidence (Pen. Code, § 1538.5), which they now assert was error. The principal issue raised on appeal is whether information acquired by a warrantless search of an apartment house trash can used in common with other tenants could properly be used as the basis for the issuance of a search warrant. Stewart also claims the search of his person incidental to his arrest was unlawful.

### FACTS

Both Stewart and Thomas were known by San Diego police for their bookmaking activities long before the events which led to this prosecution. It was known that Thomas had conducted "phone spots" at various locations he rented under various assumed names. In early 1972, while he was under investigation for possible bookmaking in the Pacific Beach area of San Diego, Thomas was traced to a multi-unit apartment complex located at 5114 Dawes Street. He had rented an apartment there in a building called Tiki One, using the name "James Duncan" and had a private telephone installed with an unlisted number. He was the only authorized occupant of the apartment, had been furnished with a single key and had not been authorized to have it duplicated.

From January 19 to February 15 his apartment was kept under surveillance by the police. It was Thomas' habit to leave for a short time early each morning, proceed to a newsstand and sometimes to a grocery store, then return to spend the rest of the day in his apartment. With the exception of some TV repairmen, his only visitor was Stewart, whose visits were frequent but short, usually lasting 30 minutes or less.

Behind the apartment house by the alley stood about nine covered trash cans which had been provided for the common use of all the tenants. No particular can was assigned to any particular tenant. The trash was collected from this location each Friday.

On Friday, February 4, Officer Lindsley saw Stewart enter the apartment about 9 a.m. and leave 20 minutes later. At 9:45 a.m. Thomas carried a cardboard box from his apartment to the trash cans, lifted the lids and carefully looked inside several cans, then emptied the contents of his box into the third can.

He placed a stack of newspapers on top of the trash already there, then covered them with other trash, replaced the lid, and returned to his apartment. Lindsley had seen the words "Racing Form" on one of the newspapers.

Officer Showalter, at Lindsley's direction, immediately went to the trash can, removed two paper bags full of trash, and then retrieved the layer of newspapers from the middle of assorted refuse. He found the stack to consist of seven packets, each made up of a Daily Racing Form folded over the National Daily Reporter, folded over "ABC" cards bearing numbers and writing used in bookmaking operations.

On February 10 Thomas again appeared with his cardboard box and systematically arranged his trash in a carefully selected trash can. Shortly after he returned to his apartment, a woman tenant checked the contents of each trash can and removed newspapers and bottles, as she had done on each day during the surveillance. After she left, Officer Wright, pursuant to instructions, picked up the trash Thomas had deposited, found it to consist of the National Reporter and several sheets from a columnar pad which appeared to be betting registrations.

Partly on the basis of the information gained from the search of the trash can, Officer Guerin applied for and obtained a warrant to search the apartment and the person of defendant Thomas. The officers kept the warrant for several days and continued their surveillance. On February 15 they saw Stewart enter the apartment during Thomas' absence, unlocking the door with a key he pulled from his pocket. Armed with the warrant Officer Showalter immediately went to the door and knocked several times. When Stewart opened the door a few inches, Showalter announced he had a search warrant for the premises and for Thomas and proceeded to enter. Officer Guerin followed him, caught sight of bookmaking paraphernalia on the kitchen table, inspected it at close range, and then placed Stewart

under arrest for bookmaking. He had arrested Stewart for bookmaking on previous occasions.

In a search incidental to the arrest, Showalter found in Stewart's pocket a key to the apartment and an adding machine tape listing moneys to be paid by bettors on February 12. A search of the apartment pursuant to the warrant uncovered various other items of bookmaking paraphernalia.

Later the same day Thomas and Stewart were asked to fill out certain forms as exemplars of their handwriting. When Thomas asked whom he should put down as his employer, Stewart said, "For hell's sake, don't put my name down."

Thomas and Stewart were charged by indictment with four counts of bookmaking in violation of subdivisions 1, 2, 3 and 6 of Penal Code section 337a and also with conspiracy to commit bookmaking in violation of Penal Code section 182, subdivision 1; in addition Thomas was charged with one count of violating subdivision 4 of Penal Code section 337a. A supplement to the indictment alleged Thomas had three prior bookmaking convictions and Stewart had one. Defendants' motions under Penal Code section 1538.5, as well as Stewart's motion under Penal Code section 995 were denied. The motion to suppress was heard and determined on the basis of the evidence introduced before the grand jury[1] as well as at the suppression hearing.

After denial of their motions defendants pleaded nolo contendere (Stewart) and guilty (Thomas) to count One and admitted the alleged prior convictions; the remaining counts against them were dismissed in furtherance of justice. They were both granted probation for five years on conditions which included submitting to search at any time and serving one year in the custody of the sheriff.

## I. THE LEGALITY OF THE TRASH CAN SEARCHES

■ Whether the evidence seized by the police was located in a "constitutionally protected area" or whether the search involved a trespass is not

[1]Although the transcript of the proceedings before the grand jury was not actually introduced into evidence, it was clearly before the court. The judge announced he had read the transcript in its entirety, and no objection was made; defendant Stewart relied upon it in his notice of motion and points and authorities, and counsel for both defendants referred to the transcript during argument and in their appellate briefs. Moreover, it is necessary to refer to the list of exhibits introduced into evidence before the grand jury in order to determine precisely what evidence appellants sought to suppress. Accordingly, this court, at the request of the Attorney General, has augmented the record to include the transcript of the grand jury proceedings, as well as the affidavit supporting the search warrant.

necessarily determinative of the validity of the search. An appropriate test is whether the person involved has established a *reasonable* expectation of privacy and, if so, whether that expectation has been violated by *unreasonable* governmental intrusion. (*People* v. *Bradley,* 1 Cal.3d 80, 84 [81 Cal. Rptr. 457, 460 P.2d 129]; *People* v. *Edwards,* 71 Cal.2d 1096, 1104-1105 [80 Cal.Rptr. 633, 458 P.2d 713].)

In support of their claim the trash can searches were illegal, and that the information so acquired could not be used as a basis for a valid search warrant (see *People* v. *Roberts,* 47 Cal.2d 374, 377 [303 P.2d 721]; *Raymond* v. *Superior Court,* 19 Cal.App.3d 321, 326 [96 Cal.Rptr. 678]), defendants cite and rely upon *People* v. *Krivda,* 5 Cal.3d 357 [96 Cal.Rptr. 62, 486 P.2d 1262] [reiterated in 8 Cal.3d 623 [105 Cal.Rptr. 521, 504 P.2d 457]]. *Krivda* held the defendants in that case had and were entitled to a reasonable expectation that their trash barrels, placed on the sidewalk for collection, would not be rummaged through by police officers acting without a warrant, and that police inspection of their trash after its transfer into the trash truck constituted an unreasonable governmental intrusion. (See p. 367.) The court stated: "The placement of one's trash barrels onto the sidewalk for collection is not . . . necessarily an abandonment of one's trash to the police or general public." (*People* v. *Krivda, supra,* 5 Cal.3d 357, 366.)

It may well be, as the Attorney General urges us to hold, that this case can be distinguished from *Krivda* solely on the basis of the fact the apartment house trash cans involved were used in common by all of the apartment house tenants. (See *People* v. *Superior Court* [*Barrett*], 23 Cal. App.3d 1004 [100 Cal.Rptr. 604], which held the defendant had abandoned her trash bag by placing it in her neighbor's garbage can, thereby foresaking any reasonable expectation of privacy as to its contents.) Logically, an apartment house tenant, using trash barrels in common with other tenants, has less reason to believe what he deposits in the trash will remain private than does the home dweller who provides and uses his own individual trash cans.

What further distinguishes this case from *Krivda,* however, is the fact that police here had probable cause to believe the trash cans contained evidence of a crime. (See *People* v. *Dumas,* 9 Cal.3d 871, 881-887 [109 Cal.Rptr. 304, 512 P.2d 1208].)[2] The police knew that Thomas had three

---

[2] In *Dumas,* the Supreme Court upheld the warrantless search of an automobile where (1) the police had probable cause to believe it contained contraband, and (2) the circumstances rendered the obtaining of a search warrant an impractical alternative (see pp. 884-885). While *Dumas* dealt directly with an automobile, it also

previous bookmaking convictions. They also knew Thomas was presently occupying an apartment rented under an assumed name, knew he had been regularly spending his entire day near a busy telephone with an unlisted number, and knew that his only but frequent visitor was another known bookmaker. These facts coupled with their observations of him carefully selecting the can in which to place his trash and carefully concealing stacks of racing form papers under his other trash shortly before it was to be collected, provided the police with both probable cause to believe the trash can contained evidence of Thomas' bookmaking activities and the exigent circumstances permitting immediate retrieval of the evidence without delaying to obtain a warrant. (*People* v. *Dumas, supra,* 9 Cal.3d 871, 884.)

## II. THE SEARCH OF STEWART INCIDENT TO HIS ARREST

Stewart contends the prosecution failed to show probable cause for his arrest and that the evidence of the key and adding machine tape found on his person should have been suppressed. The contention is without merit. Stewart was a known bookmaker and had recently been observed making frequent, short visits to a suspected "phone spot." By using his own key to enter the apartment during Thomas' absence, he demonstrated his dominion and control over the premises and the bookmaking paraphernalia it contained. From these facts the officers could reasonably infer he was presently engaged in bookmaking. Therefore, his arrest was upon probable cause, and the search incidental thereto was proper. (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Hernandez,* 250 Cal.App.2d 842, 846 [58 Cal.Rptr. 835].)

The judgments are affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 14, 1973.

---

spoke of trash cans, and the opinion makes it clear such receptacles placed on the sidewalk (or at the alley) for collection are entitled to no greater degree of protection than automobiles (see fn. 9 at p. 882 and discussion at p. 884).