[No. B006936. Second Dist., Div. Seven. Dec. 13, 1985.]

THE PEOPLE, Plaintiff and Appellant, v.
PETER ROONEY, Defendant and Respondent.

636

**638**

**COUNSEL**

Ira Reiner, District Attorney, Donald J. Kaplan, Harry B. Sondheim and Arnold T. Guminski, Deputy District Attorneys, for Plaintiff and Appellant.

Arthur Lewis for Defendant and Respondent.

**OPINION**

**THOMPSON, J.**—The People bring this appeal (Pen. Code, § 1238, subd. (a)(7))[1] from the order dismissing the case against defendant who was charged with bookmaking (§ 337a). The dismissal was entered after the prosecution represented that it could not proceed due to the granting of defendant's motion to quash a search warrant and suppress evidence (§ 1538.5). The first issue before us is whether the warrantless search of the defendant's apartment building's trash bin constituted an unreasonable search and seizure. We conclude that it did for lack of probable cause. The second issue is whether a police officer's affidavit provided probable cause for the issuance of the search warrant authorizing the search of defendant's

---

[1]Hereafter, all section references are to the Penal Code.

apartment. We conclude that even excluding the items seized from the trash bin, the tip from the informant coupled with other corroborating evidence were sufficient to support the warrant. We therefore reverse and remand.

I

### FACTUAL AND PROCEDURAL BACKGROUND

The following evidence was before the magistrate. On December 3, 1983, an informant told the affiant, Officer Shorb, that defendant, Peter Rooney, was accepting wagers on professional football games over the telephone and with an answering machine at (213) 656-8430. Although the informant told Shorb that defendant was "in the location between 1600 hours and 1800 hours," the informant did not tell Shorb the address of "the location."

On December 7, 1983, Shorb ascertained through the telephone company that the number given to him by the informant was registered to a Peter Ryan at 1120 North Flores Street, apartment No. 8, West Hollywood. Shorb also determined that the utilities at that address were registered in the name of Peter Ryan.

On December 13, 1983, Shorb learned from defendant's arrest record that defendant had been arrested three years earlier for bookmaking activities at 1120 North Flores Street, apartment No. 8, West Hollywood. Shorb obtained a booking photo of defendant from the prior arrest.

On December 15, 1983, Officers Shorb and Wyeth went to 1120 North Flores Street, West Hollywood, a 28-unit apartment building with a subterranean garage. The officers entered the garage and conducted a search of the communal trash bin, which measured approximately eight by four by five feet, and was filled to capacity. Upon reaching the bottom half of the bin, Shorb discovered a brown paper shopping bag with mail addressed to defendant, but not to Peter Ryan, at 1120 North Flores Street, apartment No. 8, West Hollywood, the address obtained from the telephone company and defendant's arrest record. The bag also contained pieces of paper with "sports wagers, pays and owes, and a tally sheet of wagers on professional football teams. . . ."

While conducting a surveillance of the apartment building on December 26, 1983, Shorb saw a male caucasian, whom he recognized from the booking photograph to be defendant, drive into the subterranean garage and enter apartment No. 8. Shorb observed apartment No. 8 for approximately one hour, during which time no one entered or left. This occurred on the Friday

afternoon before a weekend when numerous professional football games were to be played.

Subsequently, Shorb dialed the telephone number that was given to him by the informant and which the telephone company told him was listed to apartment No. 8, and overheard a telephone conversation between the informant and an unknown male. The informant asked, "'What's the latest line?,'" to which the unknown male responded with the latest point spreads on professional football games.

Both Officers Shorb and Wyeth had prior experience in bookmaking investigations and arrests, from which they formed the opinion that defendant was operating a bookmaking office at the apartment. Based on Shorb's supporting affidavit which detailed the above information, a search warrant issued authorizing a search of defendant's apartment. The record on appeal contains no details of the search, the items seized, or defendant's arrest.

Defendant moved to quash the search warrant and to exclude evidence (§ 1538.5). In granting his motion, the magistrate stated that the betting markers and paraphernalia found in the warrantless search of the trash bin were the fruits of an invalid search. The magistrate concluded that the other evidence corroborating the informant's tip—the telephone conversation concerning the latest line and defendant's prior arrest for bookmaking at the same address that was matched to the telephone number provided by the informant—failed to provide probable cause to support the issuance of the search warrant.

After the superior court granted the prosecution's section 871.5 motion, defendant again moved to quash the search warrant and to suppress evidence (§ 1538.5). At the hearing on defendant's motion, the trial court ordered the search warrant quashed and the evidence suppressed on the ground that the warrantless search of the trash bin constituted an unreasonable search and seizure.

Following the prosecutor's representation that the People would not be able to proceed, the case was dismissed. The prosecution appeals from the order of dismissal.

## II

### Discussion

The prosecution contends that the warrantless search of the trash can was a valid search under both the federal and state Constitutions, and that the search warrant was properly supported by the existence of probable cause.

## A. *The Warrantless Search of the Trash Bin*

The issue before us is the reasonableness of defendant's expectation of privacy in a bag of trash placed in a communal trash bin located in the apartment's garage, an area accessible to the public. ■ First, we note that the mere fact that the trash bin was located in an area accessible to the public is not dispositive of the issue. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." (*Katz* v. *United States* (1967) 389 U.S. 347, 351-352 [19 L.Ed.2d 576, 582, 88 S.Ct. 507].)

■ With respect to the validity of trash can searches, our Supreme Court has stated that the "secondary degree of protection [that] applies to automobiles . . . also appears to apply to a trash can placed by the curb for the disposal of its contents. . . ." (*People* v. *Dumas* (1973) 9 Cal.3d 871, 882, fn. 9 [109 Cal.Rptr. 304, 512 P.2d 1208].) An automobile "may be searched upon probable cause and upon a showing that 'delay would enhance the possibility the articles would be destroyed or placed beyond the reach of the officers. [Fn. omitted.]'" (*People* v. *Parker* (1974) 44 Cal.App.3d 222, 229 [118 Cal.Rptr. 523].) In *Dumas*, the court noted that it would be anomalous to hold that a trash can next to a house may not be searched "but that an automobile parked immediately adjacent to it is subject to such a search, inasmuch as an automobile undeniably evokes at least as great an expectation of owner privacy as a trash can." (*People* v. *Dumas*, *supra*, 9 Cal.3d at p. 884.)

■ Under California law, trash placed in a trash can in one's back yard or in front of one's house where it can be collected is not abandoned property outside the scope of protection of the state Constitution. In *People* v. *Edwards* (1969) 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713], our Supreme Court held that trash placed in a trash can located in the defendant's back yard was not abandoned, and thus not placed beyond the protection of the Fourth Amendment and article I, section 19, of the California Constitution. (*Id.*, at pp. 1104-1105.) As stated in *Edwards:* "The marijuana itself was not visible without 'rummaging' in the receptacle. So far as appears defendants alone resided at the house. In the light of the combined facts and circumstances it appears that defendants exhibited an expectation of privacy, and we believe that expectation was reasonable under the circumstances of the case. We can readily ascribe many reasons why residents would not want their castaway clothing, letters, medicine bottles or other telltale refuse and trash to be examined by neighbors or others, at

least not until the trash had lost its identity and meaning by becoming part of a large conglomeration of trash elsewhere." (*Id.*, at p. 1104.)

And in *People* v. *Krivda* (1971) 5 Cal.3d 357 [96 Cal.Rptr. 62, 486 P.2d 1262], our Supreme Court held that a trash can placed in front of the defendant's house for collection of its contents was not abandoned property placed beyond the protection of the Fourth Amendment and the state Constitution.[2] While it may be reasonable to anticipate that nonpolice third persons may rummage through and scavenge from one's trash barrels despite local ordinances prohibiting such behavior, the probability of that occurrence does not necessarily create the same expectation that police would rummage through and retrieve evidence from one's trash barrels without a search warrant. (*People* v. *Krivda, supra,* 5 Cal.3d at pp. 366-367.) The court expressed a concern against "encourag[ing] a practice whereby our citizens' trash cans could be made the subject of police inspection without the protection of applying for and securing a search warrant." (*People* v. *Krivda, supra,* 5 Cal.3d at p. 367.)

■ While it appears logical to conclude that a tenant who places trash in a communal trash bin possesses less of a privacy expectation than one who places trash in a privately owned trash can such as in *Edwards* and *Krivda*, we are not prepared to adopt an "open fields" rule for communal trash bins, thereby eliminating the need for any particular showing of cause. (See *Hester* v. *United States* (1924) 265 U.S. 57, 58-59 [68 L.Ed. 898, 899-900, 44 S.Ct. 445]; *People* v. *Dumas, supra,* 9 Cal.3d at p. 882.) Our position is supported by other appellate decisions concerning communal trash bin searches that have not distinguished *Krivda* solely on the difference between privately owned trash cans and communal trash bins. (*People* v. *Parker, supra,* 44 Cal.App.3d 222; *People* v. *Stewart* (1973) 34 Cal.App.3d 695 [110 Cal.Rptr. 227].)

The court in *Stewart* recognized the logic of concluding that an apartment house tenant who uses communal trash bins has less reason to believe what he deposits will remain private than does a resident of a single family dwelling using a privately owned trash can. (*Id.*, at p. 700.)[3] But *Stewart* rec-

[2]The United States Supreme Court vacated and remanded *Krivda*, to inquire as to whether the decision was based on federal or state constitutional grounds. (*California* v. *Krivda* (1972) 409 U.S. 33 [34 L.Ed.2d 45, 93 S.Ct. 32].) The court's opinion on remand (*People* v. *Krivda* (1973) 8 Cal.3d 623 [105 Cal.Rptr. 521, 504 P.2d 457]) adopted both federal and state constitutional grounds.

[3]We note, however, that the California Supreme Court depublished *People* v. *Smith*■ (Cal.App.) which stated that "[u]sers of the communal receptacle . . . . have no more reason than the householder [in a single family dwelling] to expect their trash to be examined by police officers."

ognized that "[w]hat further distinguishes [*Stewart*] from *Krivda,* however, is the fact that police here had probable cause to believe the trash cans contained evidence of a crime." (*Ibid.*) *Krivda* "did not preclude the possibility that a warrantless search of the trash can would have been valid had probable cause existed to support it." (*People* v. *Dumas, supra,* 9 Cal.3d at p. 884.)

Similarly, the court in *Parker* upheld the warrantless search of a communal trash bin due to the existence of probable cause. (*People* v. *Parker, supra,* 44 Cal.App.3d at p. 229.) The court stated: "We do not believe, however, that [*Krivda*] thereby intended to draw any hard and fast distinction between trash which is at curbside and that which is still on the exterior premises of an apartment house. Rather, the distinction which the court drew was between 'fishing expeditions' where the officer lacked probable cause to believe the trash can contained contraband and those situations where such probable cause existed, as was the case herein. Again, analogy with the automobile cases is helpful. Searches of vehicles have been upheld not only where the vehicle was in transit on the highway, but where it was parked at a curb, adjacent to or far from the defendant's home, and even when it was parked in a common garage area of the defendant's apartment. [Citation.] Parallel reasoning requires a similar result to apply to trash in a common receptacle adjacent to a large apartment." (*People* v. *Parker, supra,* 44 Cal.App.3d at p. 231.)

We agree with *Stewart* and *Parker* that the rationale cited for relaxing the warrant requirement for automobile searches applies to communal trash bin searches. As stated by the court in *Parker:* "Materials placed in trash cans, being placed there for removal and disposal, are highly portable. While trash is typically removed on a specific ascertainable day and within certain circumscribed hours, it is just as typically not subject to the security precautions people normally take with respect to property they intend to keep. Trash placed in a common receptacle used by multiple apartment dwellers is especially likely to be tampered with. Trespassory incursions into exterior trash receptacles by human and animal foragers, although unwelcome are not totally unexpected. People normally do not take particular pains to assure that the contents of their trash bins will not be damaged by the weather and the likelihood of weather damage is increased when many people regularly use the receptacle." (*People* v. *Parker, supra,* 44 Cal.App.3d at p. 230.) Because the characteristics of trash receptacles are those "which diminish the reasonable expectation of privacy as to their contents and make it impractical to obtain a warrant, minimal additional circumstances need be shown by the People in any particular case to justify their dispensing with a warrant." (*Ibid.*)

■ ■ We now consider the validity of these decisions in light of the California Supreme Court's conclusion that article I, section 28, subdivision (d), of the state Constitution, the "Truth in Evidence" provision of the Victim's Bill of Rights (Prop. 8), abrogates "a defendant's right to object to and suppress evidence seized in violation of the California, but not the federal, Constitution." (*In re Lance W.* (1985) 37 Cal.3d 873, 879 [210 Cal.Rptr. 631, 694 P.2d 744].) While various federal courts have held that trash placed in an area where it can be collected is abandoned property that is not protected by the Fourth Amendment, those decisions are not binding on this court since the United States Supreme Court has never squarely ruled on the issue. (See *United States* v. *Sumpter* (8th Cir. 1982) 669 F.2d 1215, 1221; *United States* v. *Vahalik* (5th Cir. 1979) 606 F.2d 99, 100-101; *United States* v. *Shelby* (7th Cir. 1978) 573 F.2d 971, 973-974; *United States* v. *Crowell* (4th Cir. 1978) 586 F.2d 1020, 1024-1025; *Magda* v. *Benson* (6th Cir. 1976) 536 F.2d 111, 112-113; *United States* v. *Mustone* (1st Cir. 1972) 469 F.2d 970, 972; *United States* v. *Dzialak* (2d Cir. 1971) 441 F.2d 212, 215; *United States* v. *Minker* (3d Cir. 1962) 312 F.2d 632, 634-635.)

Because *Edwards* and *Krivda* are based on both federal and state constitutional provisions, we find them to be valid and binding authority that this court must follow until either the California or United States Supreme Court rules on the issue. Since the search of the trash bin was without a warrant, the burden was on the prosecution to show proper justification. (*People* v. *Edwards, supra,* 71 Cal.2d at p. 1099.)

The prosecution contends that the trash was abandoned and hence fell outside the protection of the Fourth Amendment when it was placed in the communal trash bin. (*Abel* v. *United States* (1960) 362 U.S. 217 [4 L.Ed.2d 668, 80 S.Ct. 683].) In *Abel,* officers arrested defendant in his hotel room and waited while defendant packed his bags and checked out of the hotel. Defendant left behind certain items in the waste basket in the hotel room. *Abel* held that it was not "unlawful to seize the entire contents of the wastepaper basket, even though some of its contents had no connection with crime. So far as the record shows, petitioner had abandoned these articles. He had thrown them away. So far as he was concerned, they were *bona vacantia.* There can be nothing unlawful in the Government's appropriation of such abandoned property." (*Id.,* at p. 241 [4 L.Ed.2d at p. 687].)

We distinguish *Abel* on its facts. *Abel* simply held that a defendant, after checking out of a hotel, retained no privacy expectation in the trash he left behind in the hotel room trash can. In the case at bench, the items were not left behind in a vacated hotel room as in *Abel,* but were placed in a trash bin in the garage of an apartment building. ■ Under the line of Cali-

fornia cases which classifies trash cans under the secondary level of protection applicable to automobiles in determining Fourth Amendment search and seizure issues (see *People* v. *Dumas, supra,* 9 Cal.3d at p. 882, fn. 9), the burden rested on the prosecution to show that the trash had been abandoned under the facts of the case, or to show that the officers had probable cause to believe that the trash bin contained contraband. (See *People* v. *Superior Court* (1972) 23 Cal.App.3d 1004 [100 Cal.Rptr. 604], which held the defendant had abandoned her trash bag by placing it in her neighbor's garbage can, thereby forsaking any reasonable expectation of privacy as to its contents.)

Here, the prosecution made no factual showing that the trash in the bin had been abandoned. The placement of one's trash in a communal bin in the subterranean garage of one's apartment building is not necessarily an abandonment of one's trash to the police or general public. As our Supreme Court stated in *Krivda:* "[H]ad defendants simply cast their trash onto the sidewalk for anyone to pick over and cart away, we would have no difficulty finding that defendants had thereby forsaken any reasonable expectation of privacy with respect thereto. [Fn. omitted.]" (5 Cal.3d at pp. 365-366.) But the existence of many municipal "ordinances which restrict the right to collect and haul away trash to licensed collectors, whose activities are carefully regulated" (*ibid.*), would appear to refute the view that the contents of one's trash bags in the trash bins become public property when placed in the bin for collection.

However, we disagree with defendant's argument that he had a heightened expectation of privacy in the trash bin because it was located within the "curtilage" of his apartment. *People* v. *Terry* (1964) 61 Cal.2d 137, 152-153 [37 Cal.Rptr. 605, 390 P.2d 381], provides contrary authority. In *Terry,* police officers observed what appeared to be a marijuana cigarette on the dashboard of the defendant's car. Like the trash bin herein, the automobile in *Terry* was located in the subterranean garage of the defendant's apartment building. In upholding the warrantless search of the car due to the existence of probable cause, *Terry* stated, "Apparently the apartment garage was a common area; the officers did not commit a trespass by entering it." (*Id.,* at p. 152.) In *People* v. *Dumas, supra,* 9 Cal.3d 871, our Supreme Court noted that the police in *Krivda,* unlike in *Terry,* lacked probable cause to justify the warrantless search. "*Krivda . . .* did not preclude the possibility that a warrantless search of the trash can would have been valid had probable cause existed to support it. In this light, no conflict with *Terry* appears, and it is clear that an automobile does not become immune from the *Carroll* [v. *United States* (1925) 267 U.S. 132 (69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790)] rule permitting warrantless search sim-

ply because it is parked on or near a defendant's premises. [Citation.]" (*Id.*, at p. 884.)

In the instant case, the trash at issue was not in plain view, but was located halfway down in the trash bin, in a paper bag. The contents of the bag were not visible without emptying or searching through the bin and the bag. The fact that the bag was "commingled" with a quantity of trash belonging to others, does not distinguish *Edwards*, because the bag's contents "had [not] lost its identity and meaning by becoming part of a large conglomeration of trash elsewhere." (*People* v. *Edwards, supra*, 71 Cal.2d at p. 1104.)

At the time of their search of the trash bin, the officers had only the hearsay information provided by the informant coupled with the knowledge that the telephone number was registered to a Peter Ryan at the same address where defendant had been arrested for bookmaking three years before. ■ Because there is nothing in the record to show that the informant was a citizen informant who was either a victim or a witness of a crime, other than the officer's conclusory use of the term "citizen informant," there must have been some corroboration of the informant's tip in order for there to have been probable cause. (See *People* v. *Smith* (1976) 17 Cal.3d 845, 852 [132 Cal.Rptr. 397, 553 P.2d 557].) ■ We find that the record is insufficient to establish the probability that evidence of bookmaking would be found in the trash bin. Had the police waited to search the trash bin until after they observed the defendant entering the apartment and after they overheard the telephone conversation concerning the point spreads, we would reach a different result.

B. *The Search Warrant Is Supported by Probable Cause, Even Excluding the Items Seized From the Trash Bin*

■ The standard by which a magistrate must determine the existence of probable cause for the issuance of a search warrant was explained in *Illinois* v. *Gates* (1983) 462 U.S. 213, 235 [76 L.Ed.2d 527, 546, 103 S.Ct. 2317], as follows: "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. While an effort to fix some general, numerically precise degree of certainty corresponding to 'probable cause' may not be helpful, it is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' [Citations.]"

■ With respect to the test for determining the credibility of anonymous informants and the accuracy of their information, *Gates* abandoned

the two-pronged test established by *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], and *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584], and adopted a test based on the totality of the circumstances. *Gates* provides: "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed. [Citation.]" (*Illinois* v. *Gates, supra,* 462 U.S. at pp. 238-239 [76 L.Ed.2d at p. 548].) The court repeated its often quoted statement: "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' [Citation.]" (*Id.,* at p. 236 [76 L.Ed.2d at p. 547].)

 We find that the search warrant authorizing the search of defendant's apartment was properly supported by probable cause. Viewing the evidence as a whole, we conclude that sufficient evidence existed to determine a significant probability that evidence of bookmaking would be found in the apartment, even excluding the items seized from the trash bin.

A review of the facts in *Gates* is helpful to our determination that probable cause existed herein. In *Gates,* the police received an anonymous letter detailing the manner in which defendants moved drugs between Florida and Illinois, and predicted a trip on May 3. Police surveillance confirmed such a trip. The court upheld the search warrant, stressing the value of the corroboration of the details of the informant's tip: "The corroboration of the letter's predictions that the Gateses' car would be in Florida, that Lance Gates would fly to Florida in the next day or so, and that he would drive the car north toward Bloomingdale all indicated, albeit not with certainty, that the informant's other assertions also were true. '[B]ecause an informant is right about some things, he is more probably right about other facts' [citation]—including the claim regarding the Gateses' illegal activity. This may well not be the type of 'reliability' or 'veracity' necessary to satisfy some views of the 'veracity prong' of *Spinelli* [v. *United States, supra,* 393 U.S. 410], but we think it suffices for the practical, common-sense judgment called for in making a probable-cause determination. It is enough, for purposes of assessing probable cause, that '[c]orroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.' [Citation.]" (*Illinois* v. *Gates, supra,* 462 U.S. at pp. 244-245 [76 L.Ed.2d at p. 552].)

In the case at bench, the informant's tip was corroborated in significant part through independent police investigation. First, defendant's police record showed that he had previously been arrested for bookmaking activities at apartment No. 8, the same apartment that was registered with the telephone company for the number provided by the informant. ▮ While defendant contends that *People* v. *Chapman* (1984) 36 Cal.3d 98 [201 Cal.Rptr. 628, 679 P.2d 62], prohibits the police from using telephone company records to obtain the names and addresses of customers with unlisted telephone numbers, we find that there was no Fourth Amendment violation here. As a consequence of *Lance W.,* the police did not need a warrant to obtain the address from the telephone company. *Chapman* explicitly recognized that such a requirement does not exist under federal law, citing *Smith* v. *Maryland* (1979) 442 U.S. 735 [61 L.Ed.2d 220, 99 S.Ct. 2577]. (*People* v. *Chapman, supra,* 36 Cal.3d at p. 107, fn. 6; see *People* v. *Lissauer* (1985) 169 Cal.App.3d 413 [215 Cal.Rptr. 335].) In addition, defendant cannot complain of the inevitable discovery of the address through his arrest record.

▮ Second, the informant's tip that defendant was in "the location" where the telephone was located between certain hours was further corroborated when defendant was seen parking his car in the apartment building and entering apartment No. 8. Although the telephone and utilities for that apartment were listed in the name of Peter Ryan rather than in defendant's name, Shorb's affidavit states that this is consistent with the conducting of bookmaking activities at that location.

Moreover, the informant's tip that defendant was taking bets over the telephone for professional football games was partially corroborated when Shorb, who dialed the number provided by the informant and registered to the apartment entered by defendant, overheard a conversation between the informant and an unknown male concerning the point spreads for professional football games.

▮ We are not persuaded by defendant's argument that the fact he was seen entering the apartment during the predicted hours and that the officer overheard a telephone conversation concerning point spreads do not constitute corroboration because there was nothing criminal about either event. However, the corroboration of an anonymous informant's tip does not require a showing of criminal activity: "In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." (*Illinois* v. *Gates, supra,* 462 U.S. at pp. 243-244, fn. 13 [76 L.Ed.2d at p. 552].) We note that here, as in *Gates,* the corrob-

orating evidence of " 'seemingly innocent activity became suspicious in light of the initial tip.' " (*Ibid.*)

Our determination of the existence of probable cause for the issuance of the search warrant is not altered even if the incriminating items found in the trash bin are excluded. The other evidence presented by the prosecution are both substantial and independent evidence that cannot be deemed tainted by any alleged illegality connected with the search of the trash bin.

Accordingly, we reverse the order of dismissal and remand for further proceedings consistent with the views expressed herein.

Johnson, J., concurred.

Lillie, P. J., concurred in the judgment only.

Petitions for a rehearing were denied January 7, 1986. Lillie, J., was of the opinion that the petitions should be granted. The petitions of both parties for review by the Supreme Court were denied March 13, 1986. Lucas, J., and Panelli, J., were of the opinion that the petitions should be granted.