Filed 10/21/16 on remand from Supreme Court

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE, | |
| Petitioner, | E061292 |
| v. | (Super.Ct.No. CR57387) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| LEONARD JOSEPH RANGEL, | |
| Real Party in Interest. | |


ORIGINAL PROCEEDINGS; petition for writ of prohibition/mandate.  Edward D. Webster, Judge.  (Retired Judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Petition granted.

Paul E. Zellerbach and Michael A. Hestrin, District Attorneys, Emily R. Hanks and Donald W. Ostertag, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

1

Steven L. Harmon, Public Defender, and William A. Meronek, Deputy Public Defender, for Real Party in Interest.

I.

INTRODUCTION

In this proceeding for extraordinary relief, the People challenge an order of the Superior Court of Riverside County declining to place defendant and real party in interest Leonard Joseph Rangel on community supervision (Pen. Code, § 3451, subd. (a)) following his release from prison. In our original published opinion filed on January 12, 2016 (and modified on Feb. 2 and 4, 2016), we agreed with the superior court's decision and denied the petition.

The California Supreme Court granted a petition for review filed by the People and subsequently transferred the matter to this court with directions to vacate our prior opinion and to reconsider the cause in light of *People v. Morales* (2016) 63 Cal.4th 399. We then invited the People and Rangel to file supplemental briefs addressing the impact, if any, of *People v. Morales* on this case.

Our original decision in this case is hereby vacated. Having considered *People v. Morales* and the supplemental briefs filed by the parties, we now grant the People's petition.

## II.

## PROCEDURAL HISTORY

In 1996, Rangel was convicted of being a felon in possession of a firearm (Pen. Code,[1] former § 12021, subd. (a)(1)) and of two misdemeanors. As a "third striker" (former § 667, subds. (b) & (e)), he was sentenced to an indeterminate term of 25 years to life in state prison.

In 2012, the electorate adopted Proposition 36, known as the Three Strikes Reform Act of 2012. Proposition 36 amended section 667 to provide prospectively that many of those defendants who have two prior strikes but whose current conviction is not for a "serious and/or violent felony" are subject only to a doubled base term sentence (§ 667, subd. (e)(1)) rather than the minimum sentence of 25 years to life term reserved for more serious current violators. (§ 667, subd. (e)(2)(A)(ii).) At the same time, the electorate added section 1170.126 as a retroactive mechanism by which inmates sentenced as "third strikers" under the old law could petition to have their sentences recalled and be resentenced under the new provisions, if they would have been subject only to the lesser term had they been sentenced under the new law and met specified other requirements.

---

[1] All additional undesignated statutory references are to the Penal Code.

Rangel filed a request under Proposition 36 on November 13, 2012, which the superior court granted on April 9, 2014. Rangel was resentenced to the upper term of three years for the weapons offense, doubled to six years, plus three additional one-year prior prison term enhancements (§ 667.5, subd. (b)), for a total of nine years in state prison. The People did not challenge the order granting Rangel's petition.

Due to the nature of his current conviction, Rangel would normally have been subject upon release from prison to a period of community supervision under section 3451, part of the Postrelease Community Supervision Act of 2011 (PCSA). That act provides that except for more serious offenders, as described, inmates released from prison on or after October 1, 2011, are subject to a new program of community supervision for a period not to exceed three years. (§ 3451, subd. (a).) Serious offenders remain subject to the existing system of parole. (§§ 3000.08, subd. (a), 3451, subd. (b).)

The superior court in this case offered Rangel the choice to participate in the community supervision program. The court explained to Rangel the benefits of postrelease supervision, including the possibility of referrals to counseling and substance abuse assistance as well as job-finding assistance. It also pointed out that if Rangel did not comply with the conditions of his supervision, he could be returned to custody. Rangel declined the offer, and the superior court did not order him to participate in community supervision.

The petition before this court followed.[2]

## III.

## ANALYSIS

In their petition, the People contend the superior court erred by not ordering Rangel to serve a period of community supervision under section 3451.  Rangel does not dispute that community supervision is mandatory and that prisoners who are resentenced under Proposition 36 are subject to such a period of community supervision.  (§ 3451, subd. (a).)  Instead, Rangel contends he and other prisoners who are resentenced under

---

[2]  Rangel requested that we take judicial notice of a 2015 unpublished opinion issued by this court on a similar issue.  We deny the request.

Although, generally, unpublished opinions may not be cited by the parties or considered by this court (Cal. Rules of Court, rule 8.1115(a)), Rangel contends we may consider the 2015 opinion under an exception for unpublished opinions that are "relevant to a criminal or disciplinary action because it states reasons for a decision affecting the same defendant or respondent in another such action."  (Cal. Rules of Court, rule 8.1115(b)(2).)  According to Rangel, the exception applies here because the superior court was the respondent in both the 2015 case and in the instant matter.

The California Supreme Court rejected a similar argument made by the People in a criminal appeal—that the People could cite an unrelated unpublished opinion where the People were the respondent on appeal.  "The terms 'defendant' and 'respondent' in California Rules of Court, [former] rule 977(b)(2) [current rule 8.1115(b)(2)], relate to the previously mentioned 'criminal or disciplinary action,' not an appellate designation.  Thus, the reference to the 'same defendant' means the defendant in a criminal action, and, particularly important here, the reference to the same 'respondent' means the respondent in the 'disciplinary action or proceeding,' not a respondent on appeal.  Thus, this exception applies only when the unpublished opinion is related to the same criminal or disciplinary action; it does not permit citing every unpublished criminal opinion in every other criminal case."  (*People v. Russo* (2001) 25 Cal.4th 1124, 1133-1134, fn. 1.)

Proposition 36, and who are subject to postrelease community supervision, are similarly situated with prisoners who are released on parole.

Prisoners who are sentenced pursuant to section 2900.5 are entitled to apply excess presentence custody credits to reduce or eliminate a period of parole. (§ 2900.5, subds. (a), (c).) Therefore, as a matter of constitutional equal protection (U.S. Const., 14th Amend., § 1; Cal. Const., art. I, § 7, subd. (a)), Rangel argues he should likewise be permitted to apply his excess postsentence custody credits toward his period of community supervision. Because Rangel's excess postsentence custody credits exceed the maximum period of three years for community supervision (§§ 3451, subd. (a), 3455, subd. (e), 3456, subd. (a)(1)), he contends the trial court correctly declined to order him to participate in community supervision.[3] Applying the reasoning from *People v. Morales*, we must disagree with Rangel.

A.    *People v. Morales*.

In *People v. Morales*, *supra*, 63 Cal.4th 399, the defendant successfully petitioned the superior court to reduce his conviction for possessing heroin from a felony to a misdemeanor pursuant to Proposition 47, the Safe Neighborhoods and Schools Act.

---

[3] In addition, in his supplemental brief, counsel for Rangel asserts that Rangel was released from prison almost two and a half years ago, has not reoffended, and has successfully reintegrated himself back into society. These facts are not in the record before this court and, consequently, we may not consider them. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

(§ 1170.18.)  The superior court resentenced Morales to a jail sentence of time served and, over Morales' objection, imposed a one-year period of parole.  (§ 1170.18, subd. (d).)  Morales appealed arguing, inter alia, that his excess credits for time in custody should be used to reduce his one-year parole period.  The Court of Appeal agreed.  (*People v. Morales*, at pp. 403-404.)

The Supreme Court reversed.  The court began by explaining how the Court of Appeal's conclusion conflicted with the plain language of section 1170.18, subdivision (d), which provides in part:  "A person who is resentenced pursuant to subdivision (b) shall be given credit for time served and shall be subject to parole for one year following completion of his or her sentence, unless the court, in its discretion, as part of its resentencing order, releases the person from parole."  "On its face, this language seems to require the one-year parole period subject to the court's discretion to order otherwise.  It states that the person shall receive credit for time served *and* shall be subject to parole."  (*People v. Morales*, *supra*, 63 Cal.4th at p. 405.)  As the court noted, all persons resentenced to a misdemeanor under Proposition 47 will have been serving a felony sentence and many of them will have excess credits for time served.  (*People v. Morales*, at p. 405.)  "In those cases, if excess credits can reduce or eliminate the period of parole, the court's discretion will be curtailed or eliminated.  Thus, the Court of Appeal's conclusion would undermine the trial court's discretion in many cases."  (*Ibid.*)

The defendant and the Court of Appeal relied on the long-standing rule, enshrined in section 2900.5, subdivision (a), "that, in the ordinary situation of original sentencing,

excess presentence credits can reduce any period of parole." (*People v. Morales*, *supra*, 63 Cal.4th at p. 405, citing *In re Sosa* (1980) 102 Cal.App.3d 1002.)  Although sections 2900.5 and 1170.18 have "comparable" language indicating a defendant shall receive credit for time served, the Supreme Court noted section 2900.5 says "far more" than section 1170.18.  (*People v. Morales*, at p. 405.)  "Section 2900.5, subdivision (a), provides:  'If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the *entire term of imprisonment* shall be deemed to have been served.'  (Italics added.)  To eliminate any possible ambiguity, subdivision (c) of section 2900.5 provides:  'For the purposes of this section, "*term of imprisonment*" includes any period of imprisonment imposed as a condition of probation or otherwise ordered by a court in imposing or suspending the imposition of any sentence, and *also includes* any term of imprisonment, including *any period of* imprisonment prior to release on parole and any period of imprisonment and *parole*, prior to discharge, whether established or fixed by statute, by any court, or by any duly authorized administrative agency.'  (Italics added.)"  (*People v. Morales*, at p. 405.)

"As can be seen, section 2900.5 states two things relevant here:  (1) the person is entitled to credit for time served, and (2) the credit can reduce or eliminate the period of parole.  Section 1170.18, subdivision (d), states the first of these but *not* the second.  Instead, it states the person is to receive credit for time served *and* is subject to parole."  (*People v. Morales*, *supra*, 63 Cal.4th at p. 406.)  The Supreme Court also noted the purpose behind the enactment of section 2900.5 was "'to eliminate the unequal treatment

8

suffered by indigent defendants who, because of their inability to post bail, served a longer overall confinement than their wealthier counterparts.'" (*People v. Morales*, at p. 405, quoting *In re Rojas* (1979) 23 Cal.3d 152, 156.)

The Supreme Court next rejected the Court of Appeal's conclusion that the voters are presumed to have had existing law in mind when they enacted Proposition 47 and, therefore, "that the voters intended to make the law in this regard identical to section 2900.5." (*People v. Morales*, *supra*, 63 Cal.4th at p. 406.) "[G]iven the assumption, the conclusion is far from clear. If we assume the voters had in mind existing law, we may also assume they had in mind that the statute concerning presentence credit in ordinary cases (i.e., § 2900.5) states both that the person is entitled to credit for time served *and* that the credit can reduce or eliminate any period of parole. *We may also assume the voters knew that the purpose behind that statute was to equalize the treatment of those who could and those who could not post bail.* Because the proposition the voters were considering expressed the first part but not the second part of section 2900.5's rule, *and the purpose behind that rule is irrelevant to resentencing under Proposition 47*, no reason appears to assume the voters believed the proposition would include what it did *not* state, namely that credit for time served could reduce the period of parole." (*Ibid.*, second and third italics added.)

In addition, the Supreme Court noted the voters' intent, as reflected in the ballot materials for Proposition 47, demonstrated the voters did not intend that persons resentenced under section 1170.18 could use excess custody credits to reduce or

9

eliminate the one-year parole period. "[I]f we can assume voters had in mind existing law, and further assume the seemingly mandatory statutory language [of section 1170.18, subdivision (d)] is ambiguous, we can also make the more realistic assumption that the voters, or at least some of them, read and were guided by the ballot materials concerning the proposition." (*People v. Morales*, *supra*, 63 Cal.4th at p. 406.) "The arguments contained in the official ballot pamphlet for Proposition 47 say nothing relevant to this issue, but the analysis does. The Legislative Analyst's analysis of Proposition 47 is four pages long. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) analysis of Prop. 47 by Legis. Analyst, pp. 34-37.) Included is a discrete single paragraph captioned, in bold print, 'Resentencing of Previously Convicted Offenders.' (*Id*. at p. 36.) This paragraph explains in simple language that certain offenders currently serving felony sentences for the reduced crimes may have their sentences reduced to misdemeanor sentences. It says nothing about credit for time served. But the last sentence of this paragraph states the following: 'Offenders who are resentenced would be required to be on state parole for one year, unless the judge chooses to remove that requirement.' (*Ibid*.)" (*People v. Morales*, at pp. 406-407.)

As the court noted: "This last sentence is easy to understand and entirely unambiguous. It promised voters that offenders would be on parole for one year unless the judge deemed it not necessary. Any reasonable voter would have understood the sentence to mean exactly what it said. The initiative's drafters may have included the parole provision to increase the initiative's chances of being enacted. Some voters who

10

were concerned about simply releasing persons who had committed what had been felonies might have been reassured by this promise, a reassurance that might have persuaded them to vote for the proposition. We have no reason to believe any voter intended to curtail or eliminate the court's discretion to impose parole whenever excess credits exists, and much reason to believe the opposite." (*People v. Morales*, *supra*, 63 Cal.4th at p. 407.)

Pertinent for our purposes, the Supreme Court also addressed an argument made by amici curiae—that equal protection of the laws requires persons resentenced under Proposition 47 to be treated the same as persons originally sentenced under section 2900.5. (*People v. Morales*, *supra*, 63 Cal.4th at p. 408.) "The concept of equal protection under the laws means that persons similarly situated regarding the legitimate purpose of the law should receive like treatment." (*Ibid.*, citing *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)

The Supreme Court found the two groups were not similarly situated and, therefore, could be treated differently for purposes of using excess credits to reduce or eliminate a period of parole. "The purpose behind section 2900.5—to equalize treatment of those who can and those who cannot post bail—is irrelevant here. Accordingly, persons resentenced under Proposition 47 are not situated similarly to those sentenced under section 2900.5. Persons resentenced under Proposition 47 were serving a proper sentence for a crime society had deemed a felony (or a wobbler) when they committed it. Proposition 47 did not have to change that sentence at all. Sentencing changes

11

ameliorating punishment need not be given retroactive effect. 'The Legislature properly may specify that such statutes are prospective only, to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written."' [Citations.] 'The voters have the same prerogative.' [Citation.] [¶] Here, the voters have given Proposition 47 some retroactive effect. Some persons originally sentenced as felons can receive the benefit of a favorable resentencing. But the voters imposed a price for that benefit—parole for one year unless the court orders otherwise. Equal protection of the laws does not mean a person can claim the benefits of an ameliorative change in the law but refuse to accept the price. The voters could rationally conclude that those who receive the benefit of a new misdemeanor sentence should at least be placed on parole when released on the reduced sentence. [Citation.]" (*People v. Morales*, *supra*, 63 Cal.4th at pp. 408-409.)

B.     Application of *People v. Morales* to Rangel's Case.

We conclude *People v. Morales* mandates the conclusion that persons who are subject to community supervision pursuant to section 3450 et sequitur after serving their sentence are not entitled to use excess postsentence custody credits to reduce or eliminate the period of community supervision.

The plain language of section 3451 does not support Rangel's assertion that he is entitled to apply excess custody credits to a period of community supervision. Whereas section 2900.5 provides expressly that prisoners released on parole are entitled to have excess presentence custody credits applied toward a period of parole (§ 2900.5,

12

subds. (a), (c); *People v. Morales*, *supra*, 63 Cal.4th at pp. 405-406), section 3451 is completely silent on the question of excess custody credits.  In relevant part, section 3451 provides:  "*Notwithstanding any other law* and except for persons serving a prison term for any crime described in subdivision (b), [i.e., more serious offenders who are subject to normal parole (§ 3000.08, subd. (a)),] all persons released from prison on and after October 1, 2011, or, whose sentence has been deemed served pursuant to Section 2900.5 after serving a prison term for a felony shall, upon release from prison and for a period not exceeding three years immediately following release, be subject to community supervision provided by the probation department of the county to which the person is being released . . . ."  (§ 3451, subd. (a), italics added.)

On its face, section 3451 unambiguously provides that persons such as Rangel are subject to a mandatory period of community supervision, and nothing in that statute provides for application of excess postsentence custody credits toward that period.  And as a pure matter of statutory interpretation, use of the language "[n]otwithstanding any other law" would appear to foreclose Rangel's argument that section 3451 should be applied the same way as section 2900.5.  (See, e.g., *In re Greg F.* (2012) 55 Cal.4th 393, 406 ["When the Legislature intends for a statute to prevail over all contrary law, it typically signals this intent by using phrases like 'notwithstanding any other law' or 'notwithstanding other provisions of law.'"].)

Even if we were to conclude the language of section 3451 is ambiguous on the question of credit for time served, the available legislative history does not support

13

Rangel's claim either. The legislative history of the Criminal Justice Realignment Act of 2011, which enacted the PCSA (Stats. 2011, ch. 15, § 479), and the legislative history of subsequent amendments to section 3451 simply do not address the question of excess custody credits and, therefore, neither support nor refute Rangel's claim. To the extent the intent of the voters who adopted Proposition 36 is relevant to our analysis, it is ambiguous at best on the questions posed here. In contrast to the ballot pamphlet for Proposition 47, that was silent on the question of custody credits but expressly promised a mandatory period of parole for resentenced offenders (*People v. Morales*, *supra*, 63 Cal.4th at pp. 406-407), the arguments in favor of and the official legislative analyst's analysis of Proposition 36 were completely silent on the question of credit for time served *and* on the question of postrelease supervision. Indeed, as Rangel points out in his supplemental brief, the failure of the drafters of Proposition 36 to expressly condition resentencing on a period of postrelease supervision was one of the main points used in the arguments against the adoption of Proposition 36. (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) rebuttal to argument in favor of Prop. 36, p. 52 ["Some of these dangerous criminals will be released WITHOUT STATE PAROLE OR ANY LAW ENFORCEMENT SUPERVISION"]; *id*., argument against Prop. 36, p. 53 ["Worse yet, some of these criminals will be released from prison WITHOUT PAROLE OR ANY SUPERVISION!"].) Although the opponents of the initiative told the voters that at least some prisoners resentenced under section 1170.126 would pay no "price" for their resentencing (see *People v. Morales*, at 409), we must assume the voters who adopted

14

Proposition 36 were aware of the existing PCSA, which mandates community supervision and is completely silent on the question of custody credits. (*People v. Morales*, at p. 406.)

Addressing Rangel's equal protection claim, we conclude persons subject to community supervision are not similarly situated with parolees and, therefore, Rangel is not entitled to apply excess custody credits toward his period of community supervision. As the Supreme Court stated in *People v. Morales*, "[t]he concept of equal treatment under the laws means that persons similarly situated regarding the legitimate purpose of the law should receive like treatment." (*People v. Morales*, *supra*, 63 Cal.4th at p. 408, citing *Cooley v. Superior Court*, *supra*, 29 Cal.4th at p. 253.)

In a number of respects, community supervision is similar to parole. Community supervision and parole serve precisely the same purpose—to facilitate the successful reintegration into society of persons released from prison, while protecting the public through active supervision of the former inmate. (Pen. Code, §§ 3000, subd. (a)(1) [parole], 3450, subd. (b)(5) [community supervision].) Indeed, the express purpose of the PCSA was simply to shift the responsibility for supervising certain released inmates from the state to local jurisdictions. (Pen. Code, §§ 3450, subd. (b)(5), 3451, subds. (a), (c)(1), 3457.) Both programs of supervision are limited to three years for most offenders. (Pen. Code, §§ 3000, subd. (b)(2)(A) [parole], 3451, subd. (a) [community supervision], 3455, subd. (e) [same], 3456, subd. (a)(1) [same].) Parolees and persons on community supervision are subject to various conditions of their release and may have their release

15

revoked for failure to comply with those conditions. (See, e.g., Pen. Code, § 3004, subd. (a) [parole] and Cal. Code Regs., tit. 15, § 2512 [same]; Pen. Code, §§ 3453 [community supervision] and 3465 [same].) Although persons subject to community supervision may not be returned to prison for violating the terms of postrelease supervision (Pen. Code, § 3458), former inmates under both parole and community supervision may be returned to custody for violating the conditions of release. (Pen. Code, §§ 3057, subd. (a) [parole], 3455, subd. (a)(1), (a)(2) [community supervision].) Finally, several statutes apply equally to both sets of offenders and treat them as equivalent. (E.g., Pen. Code, § 3015, subd. (d) [authorizing participation in a "reentry court" program by both groups].)

Despite the similarities between community supervision and parole, for purposes of applying excess custody credits to postrelease supervision, persons subject to the former are not situated similarly to persons subject to the latter. Perhaps the central theme of *People v. Morales* is that the ability to apply excess *presentence* custody credits to a period of parole under section 2900.5 is tied inextricably to the core purpose of that statute—to eliminate unequal treatment suffered by indigent defendants who cannot afford to post bail pending trial and, consequently, serve a longer period of confinement than more wealthy defendants who can afford bail. (*People v. Morales*, *supra*, 63 Cal.4th at p. 405.) When it distinguished between persons subject to original sentencing under section 2900.5 and persons resentenced under Proposition 47, the Supreme Court repeatedly concluded the purpose behind section 2900.5 was inapplicable in the context

16

of resentencing under Proposition 47.  (*People v. Morales*, at pp. 406-408.)  Indeed, absence of the concern behind section 2900.5 in the context of Proposition 47, resentencing was the main reason the Supreme Court concluded defendants resentenced under Proposition 47 were not similarly situated with persons sentenced under section 2900.5.  (*People v. Morales*, at p. 408.)

We must reach the same conclusion here.  Like persons who are resentenced under Proposition 47, prisoners who are resentenced under Proposition 36 were serving a "proper sentence."  (*People v. Morales*, *supra*, 63 Cal.4th at p. 408.)  At the time they were *originally* sentenced under the former three strikes law, those prisoners who could not afford to post bail would have already received credit toward their sentence for the time they spent in presentence custody.  (*People v. Thomas* (1999) 21 Cal.4th 1122, 1125-1130 [holding three strikes defendants are entitled to presentence custody credits under §§ 2900.5 and 4019].)  In other words, as in the context of Proposition 47, the legislative purpose behind section 2900.5—to eliminate unequal treatment between indigent defendants who cannot afford bail and wealthy defendants who can—is irrelevant at the time of resentencing under Proposition 36.  (*People v. Morales*, at p. 408.)

Therefore, although persons originally sentenced under section 2900.5 who are released on parole and persons subject to postrelease community supervision under section 3451 should be treated similarly for some purposes (see *People v. Jones* (2014) 231 Cal.App.4th 1257, 1267, fn. 8 [validity of conditions of supervision]), for purposes

17

of applying excess custody credits to a period of postrelease supervision, we conclude prisoners who are resentenced under Proposition 36 are not situated similarly with persons originally sentenced under section 2900.5 and, consequently, they may be treated differently. (*People v. Morales*, *supra*, 63 Cal.4th at pp. 408-409.)

Because we conclude Rangel was not entitled as a matter of equal protection to apply excess postsentence custody credits to reduce or eliminate his mandatory period of community supervision, we further conclude the superior court erred by not ordering him to serve such a period.

## IV.

## DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue, directing the Superior Court of Riverside County to enter an order placing Rangel on community supervision pursuant to section 3450 et sequitur.

Petitioner is hereby directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

CERTIFIED FOR PUBLICATION

McKINSTER
J.

We concur:

HOLLENHORST
Acting P. J.

MILLER
J.

18