Filed 9/13/23  P. v. Davis CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>IAN DAVIS,<br><br>    Defendant and Appellant. | D080431<br><br><br>(Super. Ct. No. SCD289498) |

APPEAL from a judgment of the Superior Court of San Diego County, Runston G. Maino, Judge.  Affirmed and remanded with directions.

Matthew Aaron Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Collette C. Cavalier and Joy Utomi, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Ian Davis with felony arson (Pen. Code,[1] § 451, subd. (c); count 1.)  Davis later pleaded guilty to two severed counts of failing to

---

[1]    Undesignated statutory references are to the Penal Code.

register as a convicted sex offender (§§ 290.012, 290.015, 290.018, subd. (b); counts 2 and 3). The trial court denied Davis probation and imposed a two-year low term on count 1 and concurrent 16-month low terms each on counts 2 and 3.[2] It imposed but stayed various fines and fees. The court awarded Davis 832 days of custody credits (416 actual credit and 416 local conduct credits).

On appeal, Davis contends his arson conviction is not supported by substantial evidence, and thus it violates his right to due process. He further contends he is entitled to have his excess presentence custody credits applied to his parole term. The People concede the latter point, and agree the matter should be remanded with directions that the trial court apply the excess credits to Davis's parole term. We agree with the People's concession, but otherwise affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

We state the facts in the light most favorable to the prosecution. (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.)

In March 2021, S.W. and her boyfriend D.D. were gardening in their outdoor patio from their third-floor apartment when S.W. saw bluish-grey smoke coming from a very dry ravine area across her street. S.W. initially believed the smoke was from a passing car's engine, but the smoke remained after the car was gone. S.W. decided to call 911 after seeing the smoke getting worse, as months earlier a fire started by some homeless individuals had burned a large area in a nearby canyon. While she was on the phone,

---

[2] In a different case, *People v. Davis* (Super. Ct. San Diego County, 2020, No. SCD285328), involving a probation violation on two counts of indecent exposure, the court sentenced Davis to two-year low terms on each count concurrent to the present case. That case is not at issue in this appeal.

S.W. was busy looking down the street and waiting for the fire department. A little while later, she noticed a person's head, then saw the person walk towards a tree, grab a handful of dead leaves off the ground, walk back toward the fire, and put the dead material back on it. S.W. had been down to that area and knew there was "always leaf litter down there." S.W. could see flames from her vantage point, but only about a foot or two due to the terrain. She saw just one person at the fire the entire time she was watching, and he was wearing black clothing: a hat and a bulky sweatshirt. Based on what she saw, she felt the man's actions were intentional, not accidental. S.W. believed the man was trying to stoke the fire: he was yelling at the fire, flailing his arms and fanning it with his hands, and adding things to it.

As soon as S.W. concluded the call to 911, firefighters and police arrived. S.W. continued to watch the man, who attempted to leave the area before police intercepted him. S.W and D.D. pointed to the man as police arrived.

That afternoon, D.D. also saw a small plume of smoke and the man from his and S.W.'s apartment. The man, who D.D. could see from about midriff level up, had a hat, sweatshirt and backpack. D.D. saw him yelling at the fire and fanning the flames, making a commotion. D.D. also saw the man grab what looked to be leaf litter or something and throw it on the fire. D.D. felt the man's actions were intentional, not accidental. D.D., who worked in fire mitigation with the local gas and electric company, yelled at the man to put the fire out. Based on what D.D. saw, he was confident a fire was

occurring at the time. Once police and fire personnel arrived, the man was immediately contacted by police.[3]

San Diego police officers dispatched to the scene of the fire that afternoon were given a description of a male with a black hat and shirt. Upon arrival, one of the officers saw a male, whom he identified at trial as Davis, matching the description. A female across the street from the officers called out, "That's the man that set the fire." As the officers approached, Davis was walking toward them but not trying to flag them down. The officers detained Davis, who had a strong odor of smoke on him. While Davis was in custody, another officer walked down to the dirt area to try to locate the fire. That officer did not see anyone else or any transient encampments there. He observed firefighters pounding down a small, two-foot square area of charred vegetation down on the dirt path, trying to cover it with dirt. The officer saw some charred pieces of paper on the ground.

The officer returned to Davis, who was placed under arrest. Upon a search, officers found a lighter in Davis's front left pocket with a pack of cigarettes as well as other documents and personal belongings. His backpack contained two additional lighters and more documents.

Police did not investigate beyond the area to see if there were any other individuals that could have caused the fire, as Davis matched the description and the witness on the balcony had identified him as the person who set it. No one impounded the burnt paper on the ground for DNA testing. Though the San Diego Police Department has a metro arson strike team, they did not send it, likely because the firefighters put the situation under control and

---

[3]    S.W. initially testified the man slowly walked right up to police, but later agreed with a question suggesting that he had walked away from the scene. D.D. testified that the man calmly walked towards police once they arrived.

there was a relatively small amount of property damage; thus, police did not take soil samples or impound the burnt scrap of paper for DNA testing.

The officer who was at the scene testified the arson team uses a triage system by which they respond only to the most important arson calls. Based on his training and experience, as well as the fire's size, the reporting party's identification of the suspect, and the fact Davis was apprehended near the scene of the fire, the officer did not investigate beyond the area of the fire.

Dispatch records showed that two other individuals called 911 about the fire that day, but police did not interview them.

## DISCUSSION

### I. *Claim of Insufficient Evidence*

Davis contends the record lacks substantial evidence that he "deliberately ignited a fire causing land to burn such that a jury comprised of reasonable persons could conclude he willfully and maliciously set fire to or burned forest land." He relies on the principles expressed in *In re V.V.*, *supra*, 51 Cal.4th 1020 as to malice with respect to arson, and points to other cases to argue that courts have cited "particular factors or 'underlying circumstances' "—assertedly not present in this case—such as motive or possession of inflammatory materials found to have ignited the fire, to evaluate whether burn evidence establishes a deliberate or accidental act. Davis maintains that here, "the evidence demonstrated mere presence on burning land and possession of an otherwise innocent device, neither attributed to the burn nor observed to be used by [him]." He argues that without evidence as to the fire's origin, the mechanism used, incendiary versus accidental cause, or his motives, his actions at the scene "were not clearly demonstrative of a 'willful act of setting on fire.' "

5

Davis further argues S.W. and D.D.'s testimony was based on suspicion, speculation and guess work, and the jury relied on "impermissible inferences" to find he acted with malicious intent. He points to portions of S.W.'s testimony on cross-examination where she stated she never saw a flame and referred to assumptions or "a little exaggeration," as well as evidence that she told the 911 operator that it looked like the person she saw might be putting the fire out, and she "[didn't] know what's going on." He similarly argues D.D.'s testimony was that D.D. did not see flames or anyone light a fire, and could not say the actions of the person he saw contributed to any burning: "[A]ccording to [D.D.], after appellant tossed something onto the smoke, he walked away and [D.D.] could see the smoke start to dissipate, 'like it was going down.'" Davis argues "[t]his evidence is clearly not reasonable, credible nor of solid value to prove beyond a reasonable doubt [he] acted with malicious intent to start a fire."

Finally, Davis contends the police officer who testified at trial did not "fill in the significant missing links" in the circumstantial evidence. He points out the officer had never investigated an arson case, the officer did not have the assistance of the specially trained arson team, officers placed him under arrest after S.W. and D.D. identified him as the person who set the fire, the officer did not investigate what device caused the burn, the officer could not attest to whether Davis intentionally stoked it or sought to put it out, and the officer did not witness any flame. Davis argues that even if the witnesses were credible, "absent any evidence of the underlying circumstances leading to the smoking brush, the testimony lacked 'solid value' sufficient to prove [he] willfully and maliciously set fire to or burned forest land."

6

A. *Standard of Review*

Our review standard is well-settled. (*People v. Harris* (2013) 57 Cal.4th 804, 849; *People v. Montanez* (2023) 91 Cal.App.5th 245, 270.) " ' "In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence . . . . [Citation.] '[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.' " ' " (*People v. Ramirez* (2022) 13 Cal.5th 997, 1117-1118; *In re V.V.*, *supra*, 51 Cal.4th at p. 1026; *People v. Montanez*, at p. 271.)

" 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts . . . .' " (*People v. Lee* (2011) 51 Cal.4th 620, 633; see *People v. Ramirez*, *supra*, 13 Cal.5th at p. 1118.) "And ' "unless the testimony is physically impossible or inherently improbable, testimony of a witness is sufficient to support a conviction." ' " (*People v. Montanez*, *supra*, 91 Cal.App.5th at p. 271, quoting *People v. Ghobrial* (2018) 5 Cal.5th 250, 281; see also *People v. Elwood* (1988) 199

7

Cal.App.3d 1365, 1372.) " ' "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' " ' the factfinder's decision." (*Montanez*, at p. 271, quoting *People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

B. *Legal Principles*

A person is guilty of arson under section 451 if he or she "willfully and maliciously sets fire to or burns or causes to be burned . . . any structure, forest land, or property." (§ 451; see *In re V.V.*, *supra*, 51 Cal.4th at p. 1027.) "Arson of . . . forest land is a felony punishable by imprisonment in the state prison for two, four, or six years . . . ." (§ 451, subd. (c).) For purposes of subdivision (c), " '[f]orest land' means any brush covered land, cut-over land, forest, grasslands, or woods." (§ 450, subd. (b).) The burning of any part of land or property, " 'however small,' " is sufficient. (*In re Jesse L.* (1990) 221 Cal.App.3d 161, 166, quoting *People v. Haggerty* (1873) 46 Cal. 354, 355.)

The court in *In re V.V.* detailed the relevant principles concerning intent from the arson statutes' definitions. The term "willfully," applied to the intent with which an act is done, means "a purpose or willingness to commit the act"; it does not require any intent to violate the law or injure another. (*In re V.V., supra*, 51 Cal.4th at p. 1027.) When used in a penal statute, the terms "willful" or "willfully" "require only that the illegal act . . . occur 'intentionally,' without regard to motive or ignorance of the act's prohibited character." (*Ibid.*) The term " ' "implies no evil intent; ' "it implies that the person knows what he is doing, intends to do what he is doing and is a free agent." ' " ' " (*Ibid.*, quoting *People v. Atkins* (2001) 25 Cal.4th 76, 85 (*Atkins*).)

For purposes of arson, "malice will be presumed or implied from the deliberate and intentional ignition or act of setting a fire without a legal

8

justification, excuse, or claim of right." (*In re V.V.*, *supra*, 51 Cal.4th at p. 1028.) This type of malice, referred to as "malice in law" (*ibid.*), will be shown by " ' "[a]n intentional act creating an *obvious fire hazard* . . . done without justification . . . ." ' " (*Ibid.*) Arson's " 'willful and malice requirement ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire; " 'in short, a fire of incendiary origin.' " ' " (*Id.* at p. 1029, quoting *Atkins*, *supra*, 25 Cal.4th at p. 88.)

Thus, the crime of arson requires only general criminal intent; "the specific intent to set fire to, burn, or cause to be burned the relevant structure or forest land is not an element of arson." (*In re V.V.*, *supra*, 51 Cal.4th at p. 1027.) " '[T]here must be a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant . . . property.' " (*Id.* at p. 1029, see also *id.*, at p. 1031, fn. 6, quoting *Atkins*, *supra*, 25 Cal.4th at p. 89.) "[A] willful act that causes a fire without further evidence of the underlying circumstances would be insufficient to establish malice." (*In re V.V.*, at p. 1031, fn. 6.)

C. *Analysis*

Here, the evidence showed that police found Davis in the area of a small fire, matching the description of the witnesses, smelling of smoke, and in possession of three lighters as well as paperwork. The police officer saw charred pieces of paper on the ground in the area. Witnesses S.W. and D.D. described Davis as stoking or fanning the fire, as he was yelling, flailing his arms, fanning with his hands, and adding dead leaves to it. S.W. was familiar with the area and knew there was leaf debris there. Both witnesses viewed Davis's actions as intentional, not accidental. D.D., who worked in

9

fire mitigation, was confident that a fire was occurring at the time. The evidence and reasonable inferences that may be drawn from it is that Davis manipulated one or more of his three lighters to set paper on fire, then attempted to start a brush fire with it, using dry leaves to stoke it. It is an obvious fire hazard to set a piece of paper on fire and/or drop the burning paper on the ground in an area with dry vegetation. As *In re V.V.* makes clear, it is not necessary to have evidence that Davis intended to set a fire, as long as he did an intentional act that would lead a reasonable person to realize that a direct, natural, and highly probable consequence would be the burning of land. (See *In re V.V.*, *supra*, 51 Cal.4th at pp. 1030-1031.)

It is true that neither S.W. or D.D., nor the officer at the scene, directly saw Davis start the fire. But the circumstantial evidence that Davis did so is strong, when he had the means and materials to do so, and a fire in fact occurred in the area where the witnesses saw him alone. Nor did any witness describe Davis's actions as malicious. But it is reasonable to infer that Davis acted with malice, as a jury may imply that intent from a deliberate and intentional act of setting and stoking a fire where Davis presented no "legal justification, excuse or claim of right." (*In re V.V.*, *supra*, 51 Cal.4th at p. 1028.)

That the evidence might permit a different conclusion (i.e., that Davis may have been putting out a fire he did not start) is of no moment in our search for substantial evidence. If the circumstantial evidence reasonably justifies the jury's findings, " 'the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " (*People v. Perez* (1992) 2 Cal.4th 1117, 1124; *People v. Thomas* (2017) 15 Cal.App.5th 1063, 1073 ["The question is not whether the jury reasonably could have reached a different

10

conclusion. Instead, it is whether any reasonable trier of fact could have reached the same conclusion as the jury"]; see also *People v. Sullivan* (2007) 151 Cal.App.4th 524, 564.)

Nor does it matter that S.W. or D.D. may have *also* testified they did not see anything below Davis's shoulders or midsection, or that S.W. either "assum[ed]" or did not know what he picked up. The jury could nevertheless conclude the witnesses deduced what Davis was doing by his movements and their familiarity with the area, knowing it "always" had leaf debris there.[4] The jury was entitled to accept parts of their testimony (that they believed Davis was adding things to the fire or fanning it) and reject other arguably inconsistent parts, such as S.W.'s statement to the 911 operator that she did not know whether Davis was feeding the fire or putting it out. (Accord, *People v. Montanez*, *supra*, 91 Cal.App.5th at p. 277 [a " ' "jury properly may reject part of the testimony of a witness, though not directly contradicted, and combine the accepted portions with bits of testimony or inferences from the testimony of other witnesses thus weaving a cloth of truth out of selected available material" ' "], quoting *Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67-68.) In fact, on her redirect examination, S.W. testified she also told the 911 operator that Davis may have been "adding more stuff to [the fire]."

Davis characterizes S.W. as "admitt[ing]" that on the 911 call she engaged in a " 'little exaggeration' when telling 911 that the body she saw was 'lighting all of the brush on fire.' " He continues: "Indeed, [S.W.]

---

4     S.W. testified both that what Davis picked up "looked like a handful of litter, like leaf litter" and also that because of the terrain she could only see Davis "walk out and pick[ ] up stuff off the ground . . . and he went like this" so she was "assuming it was leaf litter." But again, the jury could accept that S.W. reasonably deduced it was leaf debris based on her knowledge of the area.

11

testified she in fact never saw an actual fire [saying] 'I never saw a flame,' only smoke." These arguments seek to attack S.W.'s credibility, or emphasize weakness in her testimony, matters outside this court's prerogative on appeal. (*People v. Elwood, supra*, 199 Cal.App.3d at p. 1372 [purported weaknesses in eyewitness testimony are to be evaluated by the jury].) As stated, " '[w]e resolve neither credibility issues nor evidentiary conflicts . . . .' " (*People v. Lee, supra*, 51 Cal.4th at p. 633.) In fact, S.W. said on direct examination that she *did* see flames from her vantage point at least partially, testimony the jury was entitled to believe. Further, S.W.'s testimony concerning her 911 call, read in context, is that she was perhaps exaggerating about Davis "lighting *all of the brush* on fire" (emphasis added), not that she was exaggerating about what she saw or her report in general.

We are unpersuaded by the several cases Davis cites in an attempt to challenge the evidence of his arson conviction. As a threshold matter, these cases, decided before *In re V.V., supra*, 51 Cal.4th 1020, are of little value to the extent they suggest some different test for arson's intent and malice elements. And when deciding sufficiency of evidence issues, " 'comparison with other cases is of limited utility, since each case necessarily depends on its own facts.' " (*People v. Wear* (2020) 44 Cal.App.5th 1007, 1030.)

The authorities do not change our conclusion in any event. In *People v. Watkins* (1968) 262 Cal.App.2d 687, the Court of Appeal found substantial evidence of a "wilful and malicious burning" where the defendant, a former friend of the victim who had earlier gone to prison as a result of his actions toward her, was seen leaving the victim's tool shed where it was later found a fire had been started, ignited by human hands. (*Id*. at pp. 688-689.) The day after the fire, the defendant called the victim and told her he was " 'going to get' her" next. (*Id*. at p. 689.) The court held the "circumstantial evidence

12

point[ed] unequivocally to appellant." (*Ibid*.) *Watkins* did not hold that the defendant's motive to act, i.e., animosity toward his former friend, was a necessary element in proving arson. But even if it did, *In re V.V.* now makes clear that evidence of " ' "motive or ignorance of the act's prohibited character" ' " is unnecessary, as long as there is an intentional act. (*In re V.V.*, at p. 1027.) In *Watkins*, as here, no witness saw the defendant actually start the fire. (*People v. Watkins*, 262 Cal.App.2d at pp. 688-689.) It is true that in *Watkins* fire investigators determined the fire was started by a human. But here, even without an expert fire investigator, a reasonable jury could draw the common sense conclusion that the fire had an incendiary or human origin by the evidence of charred paper on the ground in the area where the fire started, particularly where Davis was also found there with the instruments that could start it. We disagree with Davis's argument that "there is zero evidence . . . to suggest how the fire started, what instrumentality, if any, was used, or what conclusions could be drawn from the 'nature' of the burn." In our view, the evidence, while circumstantial, is amply sufficient to support arson's intent and malice elements.

In *People v. Clagg* (1961) 197 Cal.App.2d 209, the evidence showed two independent fires were started in a home where the defendant was living, and though the defendant urged the fire was the result of an electrical malfunction, expert witnesses testified flammable liquids or materials had been used to start them and that there was no electrical wiring overheating or shorting, nor evidence of a carelessly dropped cigarette. (*Id*. at pp. 211-212.) The court held there was strong circumstantial evidence the defendant was the arsonist: he had threatened to burn the house to penalize his estranged wife, he advanced incorrect theories for the fire's cause, he was present at the house, he reported the fire to a distant police station rather

13

than to a nearby fire station, he made false statements to authorities, and a witness saw an empty gas can on the home's rear porch the day after the fire. (*Ibid*.) Again, the *Clagg* court did not hold that this type of evidence was necessary to support the conviction; it said that proof of arson required evidence of a willful and malicious burning, and that the crime could be proved by actual burning as well as evidence that the fire was intentional or of incendiary origin. (*Id*. at p. 212.) As we have described above, this record contains evidence from which a reasonable jury could conclude Davis intentionally and maliciously set the fire as outlined in *In re V.V.* (*In re V.V.*, *supra*, 51 Cal.4th at pp. 1027-1029.)

In *People v. Curley* (1970) 12 Cal.App.3d 732, the Court of Appeal cursorily held the evidence was sufficient to support the defendant's arson conviction. (*Id*. at p. 736.) There, a fire destroyed a restaurant where the defendant was a part-time employee, partially filled or empty containers of gasoline were found in or near the building, a trail of burnt cloth led from the building to an outside parking space, and an hour after the fire was discovered police found the defendant had been admitted to the hospital for severe fire burns. (*Id*. at pp. 734-735.) Police found matching burnt cloth in the defendant's vehicle, and learned he had purchased three gallons of gasoline in one gallon containers two days earlier. (*Id*. at p. 735.) The defendant initially claimed he had been fighting a mountain fire, then testified he got burned in the mountains while hunting. (*Ibid*.) The evidence was that had defendant passed through the flames of the mountain fire, he would be highly unlikely to survive, and he was not seen in the fire area. (*Ibid*.) *Curley* contains no analysis of the requisite elements of arson, and we find it of limited use to assess the evidence here, which for the reasons stated above is sufficient to support the jury's verdict.

14

*People v. Atkins*, *supra*, 25 Cal.4th 76 was not a substantial evidence case; the California Supreme Court there held arson was a general intent crime, and that evidence of voluntary intoxication was inadmissible to negate that intent. (*Id.* at pp. 81, 84.) *In re V.V.*, on the other hand, did involve a claim of insufficient evidence of malice. (*In re V.V.*, *supra*, 51 Cal.4th at p. 1026.) In *In re V.V.*, there was direct evidence that juveniles set off a firecracker and threw it into an area of dry brush on a hillside. (*Id.* at p. 1029.) The juveniles claimed on appeal that because they did not intend to cause a fire when they took those actions, the evidence was insufficient to support arson's malice element.[5] But we assess this case on its own facts, and the absence of direct evidence that Davis set the fire and how he did so

---

[5]    In *In re V.V.*, the result of the minors' act of throwing the lit firecracker into dry brush was a five-acre brush fire. (*In re V.V.*, *supra*, 51 Cal.4th at pp. 1024, 1029, 1032-1033.) The evidence showed that a third minor had alerted the others of the danger of playing with firecrackers. (*Id.* at p. 1029.) The juvenile court found that even though the minors did not intend to set the hillside on fire and tried to avoid dry brush when throwing a "large 'cherry bomb,'" their acts of intentionally lighting the firecracker and throwing it (one of the minors lighting it with a lighter, and the other throwing it), where it exploded in dry brush, was willful and malicious. (*Id.* at pp. 1029-1030.) The California Supreme Court held the juvenile's acts, even though they were done without an intent to cause a fire or other harm, were sufficient to establish the requisite malice for arson as the boys knew their intentional acts created a fire hazard. (*Id.* at pp. 1023, 1030.) More specifically, the court found the lower court reasonably inferred that because the juveniles tried to avoid the dry brush, they knew a fire could result; that no person would objectively or realistically believe a firecracker thrown from their position would fall outside the dangerous area; and there was evidence the boys were not surprised or upset the firecracker exploded in the dry brush. (*Id.* at pp. 1030-1031.) Thus, the court held the lower court reasonably inferred the juveniles acted with malice. (*Id.* at p. 1031.)

does not convince us that the record in this case is absent substantial circumstantial evidence of Davis's intentional conduct and malice.

## II. *Excess Presentence Credits*

As stated, the trial court sentenced Davis to a two-year low term on the arson count, and awarded Davis 832 presentence custody credits. The court's sentencing minute order provides that the "presentence credits are equal to or exceed the maximum time imposed" and at sentencing, it acknowledged Davis would be released and was to report to parole.

Citing sections 1170 and 2900.5, as well as *People v. Morales* (2016) 63 Cal.4th 399, Davis contends that because his credits exceeded the imposed two-year term, he was entitled to have his excess credits applied to his parole term. He asks us to modify the judgment to reflect the required parole term reduction. The People concede Davis's 102 excess credits should be applied to reduce his parole term, and that we may remand the matter with instructions that the trial court do so.

It is appropriate to remand with such instructions. Davis's excess custody credits reduce the time he must serve on parole. (§§ 1170, subd. (a)(3), 2900.5, subds. (a), (c); *People v. Morales, supra,* 63 Cal.4th at p. 405 [recognizing the "long-established rule" that "excess presentence credits can reduce any period of parole"]; *People v. Superior Court* (*Rangel*) (2016) 4 Cal.App.5th 410, 415 [" 'in the ordinary situation of original sentencing, excess presentence credits can reduce any period of parole,' " citing *Morales*]; *People v. Codinha* (2023) 92 Cal.App.5th 976, 996, fn. 7.)

16

DISPOSITION

The matter is remanded and the trial court directed to apply Davis's excess custody credits to his parole term pursuant to section 2900.5.  In all other respects the judgment is affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


DATO, J.